1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
   100 Pine Street, 26th Floor
3  San Francisco, CA  94111
   Telephone: 415/288-4545
4  415/288-4534 (fax)
   shawnw@csgrr.com
5     – and –
   DARREN J. ROBBINS (168593)
6  BRIAN O. O'MARA (229737)
   655 West Broadway, Suite 1900
7  San Diego, CA  92101
   Telephone: 619/231-1058
8  619/231-7423 (fax)
   darrenr@csgrr.com
9  bomara@csgrr.com

10 [Proposed] Lead Counsel for Plaintiffs

11                          UNITED STATES DISTRICT COURT

12                         NORTHERN DISTRICT OF CALIFORNIA

13 GUOHUA ZHU, Individually and on Behalf of )  No. 3:09-cv-04208-JSW
   All Others Similarly Situated,            )
14                                           )  CLASS ACTION
                        Plaintiff,           )
15                                           )  PENSION TRUST FUND FOR OPERATING
        vs.                                  )  ENGINEERS' MEMORANDUM IN
16                                           )  FURTHER SUPPORT OF ITS MOTION
   UCBH HOLDINGS, INC., et al.,              )  FOR APPOINTMENT OF LEAD
17                                           )  PLAINTIFF AND APPROVAL OF
                        Defendants.          )  SELECTION OF COUNSEL
18 _____ )
                                                DATE:    December 18, 2009
19                                              TIME:    9:00 a.m.
                                                CTRM:    11
20                                              JUDGE:   Hon. Jeffrey S. White

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND OVERVIEW ..................................................................................1

II. ARGUMENT ..........................................................................................................................3

    A. The PSLRA's Lead Plaintiff Procedure...................................................................3

    B. The Operating Engineers Should Be Appointed as Lead Plaintiff ..........................3

    C. The Competing Motions Should Be Denied............................................................5

        1. The Motions Filed by the Yan Group and Kyung Cho Are the Product of Lawyer-Driven Solicitations ........................................................5

        2. The Yan Group Suffers from a Debilitating Conflict Which Renders It Inadequate ........................................................................................8

        3. The Operating Engineers Should Be Permitted to Take Discovery of the Yan Group and Kyung Cho ...................................................9

        4. The Motions Filed by the Remaining Movants Should Likewise Be Denied ...........................................................................................................11

III. CONCLUSION.....................................................................................................................11

OPERATING ENGINEERS' MEM IN FURTHER SUPP OF ITS MTN FOR APPT OF LEAD PLTF AND APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW   - i -

# TABLE OF AUTHORITIES

Page

**CASES**

*Armour v. Network Assocs.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ...........................................................................4

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) .............................................................................4

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) ...........................................................................8

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-6140 MHP, 2008 U.S. Dist. LEXIS 64633
    (N.D. Cal. Aug. 22, 2008) ..............................................................................................11

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) .............................................................................................9

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243
    (N.D. Ill. Mar. 15, 2005) ...................................................................................................9

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ......................................................................................2

*In re Cardinal Health, Inc. ERISA Litig.*,
    225 F.R.D. 552 (S.D. Ohio 2005) .................................................................................5, 8

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..........................................................................2, 8, 10, 11

*In re Enron Corp., Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) ..................................................................................5, 9

*In re Lucent Techs. Inc. Sec. Litig.*,
    194 F.R.D. 137 (D.N.J. 2000) ..........................................................................................3

*In re Michaels Stores Inc. Sec. Litig.*,
    No. 03-cv-0246-M (N.D. Tex. Oct. 24, 2003) ...............................................................10

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..................................................................3, 8, 10

*In re Quintus Sec. Litig.*,
    148 F. Supp. 2d 967 (N.D. Cal. 2001) .............................................................................8

*In re SiRF Tech. Holdings, Inc. Sec. Litig.*,
    No. C 08-0856 MMC, 2008 U.S. Dist. LEXIS 43617
    (N.D. Cal. May 27, 2008) ................................................................................................3

**Page**

*In re Sonus Networks, Inc. Sec. Litig.*,
   229 F.R.D. 339 (D. Mass. 2005) ................................................................................8

*In re Star Gas Sec. Litig.*,
   No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827
   (D. Conn. Apr. 8, 2005) ...........................................................................................11

*In re The Reserve Fund Sec. and Derivative Litig.* 09 MD 2011(PGG),
   (S.D.N.Y. Aug. 5, 2009) ..........................................................................................10

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
   628 F.2d 994 (7th Cir. 1980) .....................................................................................8

*Janovici v. DVI, Inc.*,
   No. 2:03-CV-04795-LDD, 2003 U.S. Dist. LEXIS 22315
   (E.D. Pa. Nov. 25, 2003) ...........................................................................................3

*Naiditch v. Applied Micro Circuits Corp.*,
   No. 01-CV-0649 K (AJB), 2001 U.S. Dist. LEXIS 21374
   (S.D. Cal. Nov. 5, 2001) ............................................................................................4

*Ogden v. AmeriCredit Corp.*,
   225 F.R.D. 529 (N.D. Tex. 2005) ..............................................................................6

*Prissert v. Emcore Corp., et al.*,
   Civ. No. 08-1190 MV/RLP (D.N.M. Sept. 25, 2009) ..............................................10

*Ravens v. Iftikar*,
   174 F.R.D. 651 (N.D. Cal. 1997) ..............................................................................4

*Sakhrani v. Brightpoint, Inc.*,
   78 F. Supp. 2d 845 (S.D. Ind. 1999) ........................................................................10

*Wenderhold v. Cylink Corp.*,
   188 F.R.D. 577 (N.D. Cal. 1999) ..............................................................................6

*Zucker v. Zoran Corp.*,
   No. C 06-04843 WHA, 2006 U.S. Dist. LEXIS 93469
   (N.D. Cal. Dec. 11, 2006) .........................................................................................1

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(A) .........................................................................................................8
   §78u-4(a)(3)(A)(i) .....................................................................................................7
   §78u-4(a)(3)(B)(i) .....................................................................................................1
   §78u-4(a)(3)(B)(iii)(I) ............................................................................................1, 5
   §78u-4(a)(3)(B)(iii)(I)(cc) .........................................................................................5
   §78u-4(a)(3)(B)(iii)(II) ..............................................................................................5
   §78u-4(a)(3)(B)(iv) .................................................................................................10

| | Page |
|---|---|
| Federal Rules of Civil Procedure | |
| Rule 23 | 1, 2, 5, 8 |

**LEGISLATIVE HISTORY**

| | |
|---|---|
| H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 | 3, 4 |

Class member Pension Trust Fund for the Operating Engineers ("Operating Engineers") submits this memorandum of law in further support of its motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and in opposition to the competing motions.

## I.   INTRODUCTION AND OVERVIEW

The primary purpose of the PSLRA is "to prevent 'lawyer-driven' securities litigation by placing a real party-in-interest in charge of the litigation." *Zucker v. Zoran Corp.*, No. C 06-04843 WHA, 2006 U.S. Dist. LEXIS 93469, at *5 (N.D. Cal. Dec. 11, 2006). To this end, the PSLRA instructs district courts to select as lead plaintiff the movant "most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  In making this determination, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the movant with the largest financial interest in the relief sought by the class as long as the movant ***otherwise satisfies the requirements of Rule 23***. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

There are eight motions for appointment of lead plaintiff now pending before the Court.[1] In addition to the motion filed by the Operating Engineers, competing motions were filed by: (1) the Yan Group;[2] (2) individual investor Kyung Cho; (3) DeKalb County Pension Fund; (4) a group comprised of the Louisiana Municipal Police Employees' Retirement System ("MPERS") and the City of Philadelphia Board of Pensions and Retirement ("Philadelphia," and together with MPERS, the "Pension Group"); (5) the Kansas City Firefighters' Pension System ("KC System"); (6) individual investor Mark Cooper;[3] and (7) individual investors Lap Yin Chan and Wai Shan Chan.

---

[1]   On November 20, 2009, movant Chite Lai withdrew his motion for appointment as lead plaintiff. *See* Docket #61.

[2]   While the Yan Group is purportedly comprised of three constituent members Bai Zhi Yan, Yan Properties, Inc., and Daylee Home Brother, Inc., in reality it is a single individual investor. *See* Yan Group Certifications (Docket #44-1, Ex. A) (identifying Bai Zhi Yan as the sole decision-maker seeking appointment as lead plaintiff).

[3]   Mr. Cooper also purports to represent and seek appointment as lead plaintiff on behalf of Baz Ventures LLC and Zachary Cooper.

The Operating Engineers suffered a significant loss of approximately $770,000 as a result of its Class Period purchases of artificially inflated common stock of UCBH Holdings Corp. ("UCBH"). *See* Declaration of Brian O. O'Mara In Support of Pension Trust Fund for Operating Engineers' Motion for Appointment of Lead Plaintiff and Approval of Selection of Counsel ("O'Mara Decl.") (Docket #45), Exs. A-B. Moreover, the Operating Engineers is an institutional investor which satisfies the requirements of Fed. R. Civ. P. 23.

Two of the competing movants, the so-called Yan Group and Kyung Cho, claim a larger financial interest than the Operating Engineers. However, "a movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class." *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003). As detailed herein, neither the Yan Group nor Kyung Cho is the presumptively most adequate lead plaintiff as neither movant can meet the threshold adequacy showing required under the PSLRA. Rather, their motions are the product of lawyer-driven client solicitations and their appointment as lead plaintiff would undermine the PSLRA's lead plaintiff provisions.

The motions filed by DeKalb, the Pension Group, the KC System, Mr. Cooper, and the Chans must also be denied as each of these movants possesses a smaller financial interest than the Operating Engineers and cannot demonstrate that the Operating Engineers will not fairly and adequately lead this litigation and protect the class. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if the presumptive lead plaintiff is found inadequate or atypical*.").[4]

It is the Operating Engineers' motion which should be granted, as it sustained the largest loss of any *bona fide* movant that otherwise meets the adequacy and typicality requirements of the PSLRA.

---

[4] Unless otherwise noted, all emphasis is added and citations are omitted.

OPERATING ENGINEERS' MEM IN FURTHER SUPP OF ITS MTN FOR APPT OF LEAD
PLTF AND APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW   - 2 -

## II. ARGUMENT

### A. The PSLRA's Lead Plaintiff Procedure

By enacting the PSLRA, Congress sought to encourage institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors would be beneficial because institutional investors are more apt to effectively manage complex securities litigation. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) ("The whole point of the reform was to install a lead plaintiff with substantive decisionmaking ability and authority."); *In re Lucent Techs. Inc. Sec. Litig.*, 194 F.R.D. 137, 151 (D.N.J. 2000) ("Congress determined that increasing the role of institutional investors in such actions would improve the quality of representation, thus benefiting shareholders and assisting courts."). This is so because "[o]n balance, institutional investors are better able and more willing, than either so-called figurehead plaintiffs or courts, to monitor attorney conduct in securities class actions." *Id*.

### B. The Operating Engineers Should Be Appointed as Lead Plaintiff

The Operating Engineers possesses the largest loss of any institutional investor which has timely sought appointment as lead plaintiff. The Operating Engineers is the paradigmatic lead plaintiff envisioned by Congress when it passed the PSLRA. *In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 U.S. Dist. LEXIS 43617, at *10 (N.D. Cal. May 27, 2008) (finding that "appointment of . . . an institutional investor, would be 'consistent with' the primary purpose of the PSLRA . . . to combat 'abusive practices committed in private securities litigation'"); *see also Janovici v. DVI, Inc.*, No. 2:03-CV-04795-LDD, 2003 U.S. Dist. LEXIS 22315, at *13 (E.D. Pa. Nov. 25, 2003) (confirming Congress' belief that effective "'control over the selection and actions of plaintiffs' counsel . . . could ***best be achieved*** by encouraging institutional investors to serve as lead plaintiffs'").

The PSLRA was intended to insure that plaintiffs, such as the Operating Engineers, would control the litigation as their involvement "benefit[s] shareholders and assists courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733. *See Naiditch v. Applied Micro Circuits Corp.*, No. 01-CV-0649 K (AJB), 2001 U.S. Dist. LEXIS 21374, at *6 (S.D. Cal. Nov. 5, 2001); *see also Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) ("By creating the PSLRA's lead plaintiff presumption, Congress sought to encourage the involvement of institutional investors in securities class actions . . . ."). As succinctly stated by the Honorable Vaughn R. Walker:

> First hand experience corroborates Congress' judgment. Institutional investor plaintiffs have produced a substantially larger recovery at far less attorney fees, costs and dilution of equity shareholders than the figurehead plaintiffs lawyers typically recruit and who appear at bar here.

*Ravens v. Iftikar*, 174 F.R.D. 651, 662 (N.D. Cal. 1997). *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152 (N.D. Cal. 1999) ("The framers of the Reform Act envisioned that established institutional investors would take control of securities litigation, taking it away from 'figurehead plaintiffs who exercise no meaningful supervision of litigation.'") (citing *Iftikar*, 174 F.R.D. at 661).

The Operating Engineers embodies the type of litigant the PSLRA was designed to empower: an institutional investor with substantial experience protecting the interests of others. With assets of more than $3 billion, the Operating Engineers is overseen by experienced fiduciaries and provides benefits to thousands of participants located in Northern California, Northern Nevada, Utah and Hawaii, the majority of which work in private construction as heavy equipment operators, mechanics, drillers, and/or concrete pumpers.[5] The Operating Engineers has also retained the

---

[5] As a transparent entity subject to federal reporting requirements, the Operating Engineers' *bona fides* are also readily transparent to the Court and its propriety as a lead plaintiff can easily be evaluated. Information concerning the Operating Engineers is readily available at its publicly accessible website https://www.oe3trustfunds.org, which provides information about the Operating Engineers' investments, trustees, beneficiaries, etc. Conversely, the Court has been provided little or no information about the Yan Group or Kyung Cho, impeding the Court's ability to make an informed assessment concerning these movants' adequacy and typicality or other ability to protect the interest of the absent class. *See infra*, §C.3. (seeking discovery to evaluate adequacy of competing movants).

1  nation's largest and most accomplished plaintiff's securities firm to represent it as its *sole* lead
2  counsel in this case.  The Operating Engineers has retained counsel experienced in securities
3  litigation, well known to this Court and well-suited to prosecute this action on behalf of the class.
4  *See* O'Mara Decl., Ex. D; *see also generally In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458
5  (S.D. Tex. 2002) (finding that the submissions of Coughlin Stoia's lawyers "stand out in the breadth
6  and depth of its research and insight").

7        Because the Operating Engineers has the largest financial interest in the relief sought by the
8  class of any movant that otherwise satisfies the requirements of Rule 23, it is presumptively the
9  "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  This presumption can be rebutted only
10 upon the submission of *proof* that it is subject to unique defenses or is otherwise inadequate.
11 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  No such proof has been or can be offered here to rebut the
12 presumption which lies in its favor.  Accordingly, the Operating Engineers' motion for appointment
13 as lead plaintiff should be granted.  All the other motions should be denied.

14     **C.**    **The Competing Motions Should Be Denied**

15           **1.**    **The Motions Filed by the Yan Group and Kyung Cho Are the Product of Lawyer-Driven Solicitations**
16

17       District courts must determine whether a lead plaintiff movant "otherwise satisfies the
18 requirements of Rule 23" before appointing that class member lead plaintiff.  *See* 15 U.S.C. §78u-
19 4(a)(3)(B)(iii)(I)(cc).  The Rule 23 adequacy and typicality requirements embodied in the PSLRA
20 are designed to ensure that the appointed lead plaintiff and its choice of counsel will adequately
21 protect all absent class members.  *See generally In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D.
22 552, 558 (S.D. Ohio 2005) (denying lead plaintiff motion because, among other things, the court was
23 not confident that movant's counsel would be best able to fairly and adequately represent the
24 parties).  Indeed, district courts are "under a specific obligation to appoint as lead plaintiff the class
25 member or members most capable of adequately representing the interests of the class members."
26 *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999).  Here, neither the Yan Group
27 nor Kyung Cho can make the showing required of a movant to be appointed lead plaintiff.  To the
28 contrary, the motion filed by each of these movants is the product of a lawyer-driven solicitation

1  program designed to secure a lead counsel role for their respective counsel.  *See, e.g., Ogden v.
2  AmeriCredit Corp.*, 225 F.R.D. 529, 535 (N.D. Tex. 2005) (finding, among other reasons, that the
3  fact the plaintiff had "initiated her relationship with her attorneys in response to a solicitation by
4  them" and "failed to seek any references" "tend to weigh against a finding of adequacy").

5  To illustrate, this case was initiated by plaintiff Guohua Zhu (the "Zhu Action") on
6  September 11, 2009.  Immediately after filing the Zhu Action, plaintiff Zhu caused notice to be
7  published as required by the PSLRA.  *See* O'Mara Decl., Ex. C.  However, both before and after the
8  filing of the Zhu Action, counsel for the Yan Group and Kyung Cho issued what are often referred to
9  as "trolling notices," that is, client solicitations designed to attract telephone and/or email contacts by
10  class members who will allow the soliciting law firm to proffer the class member as a "lead
11  plaintiff."

12  For example, on September 10, 2009 – **before** the filing of the Zhu Action – counsel for
13  Kyung Cho issued a press release entitled "Investor Notice: The Rosen Law Firm Announces
14  Investigation of Securities Claims Against UCBH Holdings, Inc."[6]  *See* Declaration of Brian O.
15  O'Mara in Further Support of Pension Trust Fund for Operating Engineers' Motion for Appointment
16  of Lead Plaintiff and Approval of Selection of Counsel ("O'Mara Opp. Decl."), Ex. 1 (hereinafter
17  the "Rosen Solicitation Notice").  The Rosen Solicitation Notice proclaimed that "the Rosen Law
18  Firm [was] preparing a class action lawsuit" and urged shareholders to "please contact" the Rosen
19  Law Firm "***to participate in the proposed class action***."  *Id*.  Thereafter, on November 8, 2009 – two
20  days before lead plaintiff motions were to be filed – the Rosen Law Firm continued its solicitation
21  program by issuing another press release, "remind[ing]" UCBH investors of the impending lead
22  plaintiff motion deadline:

---

[6]  The September 10, 2009 release is itself misleading as it implies that the Rosen Law Firm has been retained to investigate and bring claims "on behalf of investors who purchased UCBH securities "during the Class Period," when, on information and belief, the Rosen Law Firm did not represent class members at the time the release was issued.  Rather, it was simply fishing for a client to enable the Rosen Law Firm to file a lawsuit.

> ***Rosen Law Firm Reminds Investors That Only Two Days Remain Before Deadline for UCBH Investors to Seek to be Lead Plaintiff in Securities Class Action to Recover Stock Losses; UCBH Closed by Regulators***

*See* O'Mara Opp. Decl., Ex. 2.  Kyung Cho failed to advise the Court of his counsel's solicitation program in his motion.

Counsel for the Yan Group, Brower Piven PC ("Brower Piven"), orchestrated a similar solicitation campaign.  On September 25, 2009, Brower Piven – without even filing a complaint – issued a press release soliciting shareholders to participate in this action.  Brower Piven, however, was more focused in its solicitation efforts, seeking only investors with losses of more than $100,000, stating:

> ***Brower Piven Encourages Investors Who Have Losses in Excess of $100,000 From Investment in UCBH Holdings, Inc. to Inquire About the Lead Plaintiff Position in Securities Fraud Class Action Lawsuit Before the November 10, 2009 Lead Plaintiff Deadline***

*See* O'Mara Opp. Decl., Ex. 3.[7]  Brower Piven's solicitation, which was used to attract and form the Yan Group, failed to disclose that Brower Piven had: (i) not even filed a complaint; and (ii) simply issued a press release in an effort to obtain a lead counsel role.[8]

---

[7]     This practice of issuing solicitations immediately after a class member who has actually filed a complaint and issued a PSLRA release advising investors that a securities class action complaint has been filed has proliferated in recent months.  *See, e.g.*, O'Mara Opp. Decl., Ex. 4 (issuing solicitation notice "Encourag[ing] Investors Who Have Losses in Excess of $200,000 From Investment in Men's Wearhouse Inc. to Inquire About the Lead Plaintiff Position . . . Before The December 7, 2009 Lead Plaintiff Deadline"); Ex. 5 (issuing solicitation notice "Encourag[ing] Investors Who Have Losses in Excess of $100,000 From Investment in EnergySolutions, Inc. to Inquire About the Lead Plaintiff Position . . . Before The December 8, 2009 Lead Plaintiff Deadline"); Ex. 6 (issuing solicitation notice with headline "Encourag[ing] Investors Who Have Losses in Excess of $150,000 From Investment in R.H. Donnelley Corporation to Inquire About the Lead Plaintiff Position . . . Before The December 22, 2009 Lead Plaintiff Deadline"); and Ex. 7 (issuing solicitation notice with headline "Encourag[ing] Investors Who Have Losses in Excess of $300,000 From Investment in Boeing Company, Inc. to Inquire About the Lead Plaintiff Position . . . Before The January 12, 2010 Lead Plaintiff Deadline").

[8]     The Rosen Law Firm's September 10, 2009 and November 9, 2009 Solicitation Notices and Brower Piven's September 25, 2009 Solicitation Notice are certainly ***not*** PSLRA-mandated notices.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i) (requiring that notice be published ***in conjunction with the filing of a complaint***).  They also appear to run afoul of the California Rules of Professional Conduct as they are not labeled as "Advertising."  *See, e.g.*, Standards to Cal. R. Prof. Conduct, 1-400 (stating that a "communication" "seeking professional employment for pecuniary gain . . . which does not bear the word 'Advertisement'" is "presumed to be in violation of rule 1-400").

1    The recruitment of individuals by law firms that have not even filed an action for a class member is antithetical to the strictures of the PSLRA. 15 U.S.C. §78u-4(a)(3)(A); *Network Assocs.*, 76 F. Supp. 2d at 1032 ("recipients [of notices] could easily have thought that they needed to sign up to participate at all"). To be sure, lead plaintiff movants who permit their lawyers to engage in such tactics do not "otherwise satisfy Rule 23." *See generally Cavanaugh*, 306 F.3d at 737; s*ee also In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001) ("a putative lead plaintiff must demonstrate ability to discharge the fiduciary duty to the class"); *see also See Cardinal Health*, 225 F.R.D. at 558 (declining to appoint lead plaintiff movant because, among other things, the court was not confident that movant's counsel would be best able to represent fairly and adequately the parties). Solicitation programs such as these are contrary to the provisions of the PSLRA, as it is "in the interest of the administration of justice to give integrity to the PSLRA's mandate that litigants not lawyers direct and control class action litigation." *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 347 (D. Mass. 2005); *see also Burke v. Ruttenberg,* 102 F. Supp. 2d 1280, 1321 (N.D. Ala. 2000) (finding "concerns about the recruitment efforts of counsel" sufficient to reject lead plaintiff application). To reward theses efforts would be contrary to the PSLRA which was enacted to "diminish the risk of lawyer-driven lawsuits." *Cavanaugh*, 306 F.3d at 738. As such, the lead plaintiff motions filed by Kyung Cho and the Yan Group should be denied.

**2.    The Yan Group Suffers from a Debilitating Conflict Which Renders It Inadequate**

The Yan Group's motion should be denied for the additional reason that Yan Properties, Inc. is subject to an attack that it suffers from a conflict of interest. *See J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he fear [of unique defenses] is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.").

Indeed, in addition to being a class member, the members of the Yan Group have participated in an extensive financial and business relationship with UCBH through Yan Properties, Inc., the Yan Group's real estate arm. In fact, UCBH's wholly owned banking subsidiary during the Class Period, United Commercial Bank ("UCB"), which according to its website "is a leading bank in the United

States serving Chinese communities and American companies doing business in Greater China," is a secured creditor of Yan Properties, Inc. *See* O'Mara Opp. Decl., Ex. 8 (UCC Financing Statement between Yan Properties, Inc. and UCB); *See also Waterford Township General Employees Retirement System v. UCBH Holdings, Inc.*, Civ. No. 09-4449, Complaint, filed Sept. 22, 2009 at ¶8 (noting that during Class Period UCB made up all of UCBH's assets and revenues). This business relationship evidences that the constituent members of the Yan Group have direct relationships and business dealings with the defendants and their affiliates and will likely be subject to unique defenses. It is of no moment that the Yan Group may attempt to argue that its extensive financial dealings with UCB do not ultimately situate it differently than the thousands of other class members who neither negotiated loans with UCB nor owed it money, as "[t]he PSLRA . . . provides that we ask simply whether [a movant] **is likely to be** 'subject to' [unique defenses] . . . [not that] the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005); *Enron*, 206 F.R.D. at 455-56 (rejecting lead plaintiff movant where **potential** defenses and conflicts could endanger the interests of the rest of the class); *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the issue is framed in terms of the typicality . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.").

Accordingly, the Yan Group should not be appointed as lead plaintiff.

### 3. The Operating Engineers Should Be Permitted to Take Discovery of the Yan Group and Kyung Cho

If the Court is inclined to consider the motions filed by the Yan Group and Kyung Cho, the Operating Engineers respectfully requests that it be allowed to conduct targeted discovery as to Kyong Cho and Bai Zhi Yan. The PSLRA expressly provides that a class member may conduct such discovery upon showing a reasonable basis to do so. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also Cavanaugh*, 306 F.3d at 730 (noting that "other plaintiffs may be allowed to conduct discovery if they 'demonstrate[] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class'"). Such reasonable basis was found where, like

here, certain proposed lead plaintiffs were proffered as a result of a "lawyer-instigated" campaign and were likely to be "lawyer-dominated." *In re The Reserve Fund Sec. and Derivative Litig.*, Civ. No. 09 MD 2011(PGG), slip op. (S.D.N.Y. Aug. 5, 2009) (O'Mara Opp. Decl., Ex. 9) (ordering discovery of competing lead plaintiff movant); *see also Prissert v. Emcore Corp., et al.*, Civ. No. 08-1190 MV/RLP, slip op. (D.N.M. Sept. 25, 2009) (permitting discovery of competing movant) (O'Mara Opp. Decl., Ex. 10); *see also In re Michaels Stores Inc. Sec. Litig.*, No. 03-cv-0246-M, slip op. at 2 (N.D. Tex. Oct. 24, 2003) (O'Mara Opp. Decl., Ex. 11) (permitting discovery "to develop and present evidence, if such existed, to rebut the presumption"). In *Reserve Fund*, the court permitted competing movants to take targeted discovery to address, among other things, the circumstances of how and when the proposed lead plaintiffs first came to interact with counsel concerning the subject matter of the case, and whether certain of counsel's internet solicitation played any role in the development of an attorney-client relationship. Judge Alsup likewise granted targeted discovery when facing similar adequacy concerns at the lead plaintiff stage, which discovery ultimately "prove[d] illuminating" in rejecting certain lead plaintiff movants. *Network Assocs.*, 76 F. Supp. 2d at 1027.

Here, the solicitation programs conducted by counsel for the Yan Group and Kyung Cho raise troubling issues and subject the class to significant risk. Thus, to the extent the Court considers appointing either the Yan Group or Kyung Cho as lead plaintiff, limited discovery should first be permitted to enable the Court to have some assurance that the class will not be prejudiced by their appointment. *See* 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 854-55 (S.D. Ind. 1999) (ordering discovery to test movant's adequacy to serve as lead plaintiff). At a minimum, the Court should permit targeted discovery to address: (1) the manner in which Kyung Cho and Bai Zhi Yan identified and retained counsel; (2) the Yan Group's and Kyung Cho's ability to serve as an adequate class representative in this complex multi-million dollar class action; and (3) the Yan Group's business and financial relationship *vis-à-vis* UCBH and/or United Commercial Bank. To appoint either of these movants without first ensuring that they are not likely to be subject to adequacy or typicality attacks would have potentially disastrous effects for the class

by prejudicing the class's case at the class certification stage and in front of a jury and undermining the ability of that (impaired) lead plaintiff to negotiate vigorously on behalf of the class.

### 4. The Motions Filed by the Remaining Movants Should Likewise Be Denied

The motions of the remaining lead plaintiff movants should likewise be denied, as each movant claims a smaller financial interest than the Operating Engineers:

| Movant | Claimed Loss |
|---|---|
| *The Operating Engineers* | *$770,784* |
| DeKalb | $758,884 |
| The Pension Group | $296,906 |
| KC System | $251,354 |
| Mark Cooper | $103,000 |
| The Chans | $22,710[9] |

In fact, under controlling Ninth Circuit precedent, these movants' motions should not even be considered. *See Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if the presumptive lead plaintiff is found inadequate or atypical*.").

Because DeKalb, the Pension Group, KC System, Mark Cooper and the Chans each possess far smaller financial interests than the Operating Engineers, their motions should be denied.

## III. CONCLUSION

The Operating Engineers alone satisfies all of the PSLRA's requirements for appointment as lead plaintiff. Its motion should be granted. All of the other lead plaintiff motions should be denied.

---

[9] The Chans' attempt to include UCBH purchases made prior to the Class Period must, at this time, fail. While further investigation may reveal that the Class Period should be extended, as currently pleaded, the Class Period is April 24, 2008 through September 8, 2009. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-6140 MHP, 2008 U.S. Dist. LEXIS 64633, at *9-*10 (N.D. Cal. Aug. 22, 2008) ("The appointed lead plaintiffs can decide how to frame their amended complaint to allege an appropriate class period."); *In re Star Gas Sec. Litig.*, No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *19 (D. Conn. Apr. 8, 2005) ("The appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment.").

| | | |
|---|---|---|
| 1 | DATED: November 25, 2009 | Respectfully submitted, |
| 2 | | COUGHLIN STOIA GELLER |
| | |   RUDMAN & ROBBINS LLP |
| 3 | | DARREN J. ROBBINS |
| | | BRIAN O. O'MARA |

                s/ BRIAN O. O'MARA
                  BRIAN O. O'MARA

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
100 Pine Street, 26th Floor
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\UCBH\Lead Plantiff\BRF00063264_LP Opp.doc

CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List, and to:

Ira M. Press
825 Third Avenue, 16th Floor
New York, NY  10022

Joe Kendall
Hamilton P. Lindley
Kendall Law Group, LLP
3232 McKinney Avenue, Suite 700
Dallas, TX  75204

Ralph M. Stone
Amanda C. Scuder
Shalov Stone Bonner & Rocco LLP
485 Seventh Avenue, Suite 1000
New York, NY  10018

Howard G. Smith
Law Offices of Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA  19020

Cynthia J. Billings
Sullivan, Ward, Asher & Patton, P.C.
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 25, 2009.

s/ BRIAN O. O'MARA
BRIAN O. O'MARA

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bomara@csgrr.com

## Mailing Information for a Case 3:09-cv-04208-JSW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@btkmc.com,knguyen@btkmc.com

- **Jacqueline Scott Corley**
  hanna@kerrwagstaffe.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Phillip P Kim**
  pkim@rosenlegal.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Mark Cotton Molumphy**
  mmolumphy@cpmlegal.com,jthigpen@cpmlegal.com,oszeto@cpmlegal.com,bgoldman@cpmlegal.com,jacosta@cpmlegal.com

- **Brian O. O'Mara**
  bo'mara@csgrr.com

- **Erik David Peterson**
  epeterson@btkmc.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Adrian James Sawyer**
  sawyer@kerrwagstaffe.com,murphy@kerrwagstaffe.com

- **Dustin Lamm Schubert**
  dschubert@schubertlawfirm.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Anna Erickson White**
  awhite@mofo.com,npan@mofo.com,avickery@mofo.com,jkim@mofo.com

- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com,travisd@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`