1  COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  SHAWN A. WILLIAMS (213113)
  100 Pine Street, 26th Floor
3  San Francisco, CA  94111
  Telephone:  415/288-4545
4  415/288-4534 (fax)
  shawnw@csgrr.com
5     – and –
  DARREN J. ROBBINS (168593)
6  BRIAN O. O'MARA (229737)
  655 West Broadway, Suite 1900
7  San Diego, CA  92101
  Telephone:  619/231-1058
8  619/231-7423 (fax)
  darrenr@csgrr.com
9  bomara@csgrr.com

10  [Proposed] Lead Counsel for Plaintiffs

11             UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  GUOHUA ZHU, Individually and on Behalf of ) <br> All Others Similarly Situated, ) | No. 3:09-cv-04208-JSW |
| 14           ) | CLASS ACTION |
| 15          Plaintiff, ) | PENSION TRUST FUND FOR OPERATING |
| 16     vs. ) | ENGINEERS' REPLY MEMORANDUM IN <br> SUPPORT OF ITS MOTION FOR |
| 17  UCBH HOLDINGS, INC., et al., ) | APPOINTMENT OF LEAD PLAINTIFF <br> AND APPROVAL OF SELECTION OF |
| 18         Defendants. ) | COUNSEL |

DATE:       December 18, 2009
TIME:       9:00 a.m.
CTRM:     11
JUDGE:   Hon. Jeffrey S. White

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

    A.    The Operating Engineers Possesses a Significant Financial Interest and Will Adequately Represent the Class ................................................................2

        1.    The Operating Engineers Possesses a Larger Financial Interest than DeKalb ..........................................................................................................3

        2.    The Operating Engineers' Loss Is Legally Compensable............................4

    B.    DeKalb's Trading Pattern Renders It Atypical and Inadequate..............................6

II.   CONCLUSION..................................................................................................8

1    Proposed lead plaintiff Pension Trust Fund for Operating Engineers ("Operating Engineers")

2    respectfully submits this reply memorandum in further support of its motion for appointment as lead

3    plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C.

4    §78u-4, *et seq*.

5    **I.    INTRODUCTION**

6    Eight motions for appointment as lead plaintiff were initially filed in this case.  Four movants

7    continue to seek appointment as lead plaintiff: (1) the Operating Engineers; (2) the Yan Group; (3)

8    Kyung Cho; and (4) DeKalb County Pension Fund ("DeKalb").[1]  Of these four movants, the Yan

9    Group and Kyung Cho claim a larger financial interest than the Operating Engineers.  However, the

10   Operating Engineers alone possesses the largest loss of any movant which "otherwise satisfies the

11   requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

12   And, while Kyung Cho and the Yan Group do not challenge the Operating Engineers'

13   adequacy to serve as lead plaintiff, DeKalb raises several arguments in opposition to the Operating

14   Engineers' motion.  ***First***, while conceding that it suffered a smaller loss than the Operating

15   Engineers, DeKalb urges the Court to ignore ***losses***, and focus instead on alternative metrics such as

16   the volume of each movant's UCBH Holdings, Inc. ("UCBH" or the "Company") transactions.  *See*

17   Memorandum of Points and Authorities in Further Support of DeKalb County Pension Fund's

18   Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead

19   Counsel (Docket #69) ("DeKalb Opp.") at 5 (urging Court to ignore losses in favor of alternative

20   metrics).  However, as DeKalb itself has advocated, a movant's "financial interest" should be

21   determined by the ***loss*** it suffered.  *See, e.g.*, Notice of Motion and Motion of the DeKalb County

22   Pension Fund for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's

23   Selection of Lead Counsel; Memorandum of Points and Authorities in Support Thereof (Docket #39)

24   ("DeKalb Mem.") at 5 (equating financial interest to losses suffered).  This position is consistent

25

26   [1]    The Pension Group and KC System have submitted memoranda conceding that they are not
     the "most adequate plaintiff."  Dockets #s 62, 66.  Likewise, Lap Yin and Wai Shan Chan's and

27   Mark Cooper's failure to file an opposition memorandum should be deemed as a consent to granting
     the Operating Engineers' motion.

28

OPERATING ENGINEERS' REPLY MEMO IN SUPP OF ITS MOT FOR APPT OF
LEAD PLTF & APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW        - 1 -

1    with the Ninth Circuit's instruction that district courts are to determine which movant "has the ***most***

2    ***to gain from the lawsuit***."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).[2]

3        ***Second***, DeKalb argues that because the Operating Engineers sold its shares prior to the final,

4    Class Period-ending disclosure, its losses may prove to be unrecoverable because they may not be

5    attributed to defendants' fraud.  As such, DeKalb mistakenly claims that it possesses a larger

6    financial interest than the Operating Engineers.  This argument is simply incorrect.  As explained

7    below, while the Operating Engineers sold shares during the Class Period, there were several partial

8    corrective disclosures such that the Operating Engineers – and all other members of the class who

9    sold UCBH common stock after a partial disclosure but prior to the last day of the Class Period –

10   may recover its losses suffered during the Class Period.  As such, DeKalb's *Dura*-based "in-and-out"

11   argument fails.

12       The Operating Engineers, with losses exceeding $770,000, possesses the largest financial

13   interest of any movant ***who otherwise satisfies the requirements of Fed R. Civ. P. 23*** and should be

14   appointed as lead plaintiff.  All other motions should be denied.

       **A.**    **The Operating Engineers Possesses a Significant Financial Interest
15              and Will Adequately Represent the Class**

16

17       The PSLRA provides that the "most adequate plaintiff" is the person or group of persons that

18   in the determination of the court has the largest financial interest in the relief sought by the class ***and***

19   otherwise satisfies the requirements of Rule 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Once a lead

20   plaintiff movant has provided evidence that it possesses the largest claimed loss of any movant, and

21   also made an adequate showing as to its adequacy and typicality, the PSLRA's most adequate

22   plaintiff presumption may be rebutted by a showing of ***proof*** that a lead plaintiff "will not fairly and

23   adequately protect the interests of the class" or that it "is subject to unique defenses that render such

24   plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

25       Here, DeKalb levies several attacks on the Operating Engineers and its financial interest in

26   the outcome of this litigation.  Each of DeKalb's arguments, however, is misplaced.  The Operating

---

27   [2]    All emphasis is added and citations are omitted, unless otherwise noted.

28

Engineers possesses the largest financial interest in the outcome of this litigation and otherwise satisfies the requirements of Rule 23.  Accordingly, the Operating Engineers is the presumptively "most adequate plaintiff" and should be appointed as lead plaintiff.

### 1. The Operating Engineers Possesses a Larger Financial Interest than DeKalb

In evaluating the "largest financial interest," most courts simply determine which potential lead plaintiff claims the greatest total approximate losses.  *See, e.g.*, *Query v. Maxim Integrated Prods.*, 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) (finding movant had largest financial interest by citing to the movant's loss); *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *13-*14 (N.D. Cal. Apr. 16, 2007) ("Of the Olsten-Lax factors, courts consider the fourth factor, the *approximate losses* suffered, as *most determinative in identifying the plaintiff with the largest financial loss*"); *see also* DeKalb Mem. at 5 (recognizing that the movant that "has incurred the *largest loss* . . . has the largest financial interest in the outcome of the litigation").

Conceding that it possesses a smaller *loss* than the Operating Engineers, DeKalb urges this Court to ignore losses and instead focus on peripheral trading metrics to determine which movant has the "largest financial interest."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (presumptive lead is the movant who possesses the "largest financial interest," not the movant who purchased the most securities or purchased securities at the highest price).  This tactic is often employed by smaller movants who attempt to leapfrog movants with larger losses.  As one court has observed:

> Not surprisingly, some of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period . . . .  It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all . . . .  We believe that *the best yardstick by which to judge "largest financial interest" is the amount of loss, period*.  The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.

*In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *14-*15 (N.D. Ill. Mar. 15, 2005); *see In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 24 (D. Mass. 2008) ("While defendants have cited cases stating that courts generally prefer 'net purchasers' to 'net sellers' as

1   representative plaintiffs . . . there is scant support for the 'netting' methodology they propose; LIFO

2   and FIFO are clearly the dominant methods for loss calculation.").

3       The view that the "amount of loss" is "the best yardstick" to measure a movant's "financial

4   interest" is consistent with the Ninth Circuit's directive that "district court must compare the

5   *financial stakes* of the various plaintiffs and determine which one has the *most to gain from the*

6   *lawsuit*." *Cavanaugh*, 306 F.3d at 730.  DeKalb recognized this when it filed its opening

7   memorandum and equated "financial interest" with loss: "[DeKalb] believes that *it has incurred the*

8   *largest loss* of any other movant, and, as such, it has the *largest financial interest* in the outcome of

9   the litigation."  *See* DeKalb Mem. at 5.  Only now after recognizing that it possesses the *smallest*

10  loss of any of the remaining movants does DeKalb argue that *losses* are not determinative.  DeKalb's

11  attempt to argue to the contrary is unavailing.

12      In the end, the Operating Engineers suffered a larger loss and has more to gain from this

13  lawsuit.  *See TVIA*, 2007 U.S. Dist. LEXIS 28406, at *13 ("the court must weigh the approximate

14  losses suffered to determine the plaintiff with the largest financial loss").  As such, the Operating

15  Engineers has a larger financial interest and should be appointed as lead plaintiff.

16              **2.      The Operating Engineers' Loss Is Legally Compensable**

17      Relying on *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and its progeny, DeKalb

18  argues that the Operating Engineers' loss should be discounted because it sold shares before the

19  final, Class Period-ending disclosure.  This is not the law.  In fact, the Ninth Circuit has explained

20  that a plaintiff can establish loss causation by "demonstrat[ing] a causal connection between the

21  deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the

22  plaintiff."  *In re Daou Sys.*, 411 F.3d 1006, 1025 (9th Cir. 2005); *see also In re UTStarcom, Inc.*

23  *Secs. Litig.*, 617 F. Supp. 2d 964, 978 (N.D. Cal. 2009) ("the Complaint contains numerous

24  examples of partial corrective disclosures that the Court finds are sufficient to meet the loss

25  causation requirement"); *In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 760 (S.D. Ohio

26  2006) (collecting cases and rejecting contention that loss causation can only be triggered by a

27  corrective disclosure).

28

OPERATING ENGINEERS' REPLY MEMO IN SUPP OF ITS MOT FOR APPT OF
LEAD PLTF & APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW        - 4 -

1    Where, as here, there were numerous partial disclosures spread out over a six-month period, a

2    lead plaintiff movant who sold after partial disclosures should have little trouble proving loss

3    causation and recovering its losses.  *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534,

4    544 (E.D. Va. 2006) (explaining that "where . . . there are multiple disclosures, in-and-out traders

5    may well be able to show a loss" and that "the inflationary effect of a misrepresentation might well

6    diminish over time, even without a corrective disclosure," thus allowing in-and-out traders to prove

7    loss causation); *Montoya v. Mamma.com Inc.*, 2005 U.S. Dist. LEXIS 10224, at *6-*7 (S.D.N.Y.

8    May 31, 2005) ("[L]oss causation does not require full disclosure and can be established by partial

9    disclosure during the class period which causes the price of shares to decline . . . .").  Indeed, the

10   several actions DeKalb seeks to consolidate here allege numerous "partial disclosures" during the

11   Class Period.[3]  *See* DeKalb Mem. at 2-3 (seeking consolidation of six related actions).  Indeed,

12   DeKalb itself acknowledged the existence of partial disclosures, explaining that "[i]nformation about

13   the Company's true financial condition started to emerge beginning on March 16, 2009 when

14   Defendants restated the Company's loan loss provisions."  *See* DeKalb Mem. at 1.  And in this case,

15   each and every one of the Operating Engineers' sales occurred after several partial disclosures.  *See*

16   Declaration of Robert W. Killorin in Support of Motion of the DeKalb County Pension Fund for

17   Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel

18   (Docket #41) ("Killorin Decl."), Ex. A; *see also Montoya*, 2005 U.S. Dist. LEXIS 10224, at *6-*9

19

20   [3]    *See, e.g., Waterford Township General Employees Retirement System v. UCBH Holdings, Inc., et al.*, No. 3:09-cv-04449, Complaint, filed September 22, 2008 (N.D. Cal.) (Docket #1), ¶¶31-
21   32 (April 23, 2009, disclosure of poor financial results caused "UCBH's stock price [to] drop[] from $2.09 per share on April 23, 2009 to $1.62 per share, [a decrease which] was a result of the artificial
22   inflation caused by defendants' misleading statements coming out of the stock price"), ¶¶32-33 (May 12, 2009, disclosure that UCBH would be unable to timely file its Form 10-Q, resulting in a drop in
23   UCBH's stock price from $2.10 to $1.66 per share); *see also Perez v. UCBH Holdings, Inc., et al.*, No. 3:09-cv-04492, Class Action Complaint, filed September 23, 2009 (N.D. Cal.) (Docket #1), ¶36
24   (January 22, 2009, press release announcing disappointing results and a net loss of $53.7 million), ¶¶39-40 (under heading "The Truth Begins to Emerge," March 17, 2009, analyst report concerning
25   UCBH highlighting recently discovered problems with UCBH and lowering guidance); *see Durbin v. UCBH Holdings, Inc., et al.*, No. 3:09-cv-04513, Complaint, filed September 24, 2009 (N.D. Cal.)
26   (Docket #1), ¶¶30-31 (UCBH's April 23, 2009 release of disappointing 1Q09 financial results, resulting in a decline in UCBH stock of more than 22% on unusually heavy volume), ¶32 (May 12,
27   2009, disclosure that UCBH would be unable to timely file its Form 10-Q, sending UCBH shares does more than 20% on unusually high volume).

28

OPERATING ENGINEERS' REPLY MEMO IN SUPP OF ITS MOT FOR APPT OF
LEAD PLTF & APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW        - 5 -

1   (plaintiff who sold shares after a partial disclosure "can allege that 'the subject of the fraudulent

2   statement or omissions was the cause of the actual loss suffered'" and, therefore, satisfies the tests

3   articulated by the Supreme Court in *Dura*).

4          To be sure, where a putative lead plaintiff sold its shares after a partial disclosure of

5   misconduct by the defendant but before the final disclosure that led to the lawsuit, that lead plaintiff

6   will not face unique challenges demonstrating loss causation or recovering the losses it suffered.[4]

7   *See Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028, at *17-*21

8   (S.D.N.Y. Jan. 25, 2006); *Montoya*, 2005 U.S. Dist. LEXIS 10224, at *6-*7 ("loss causation does

9   not require full disclosure and can be established by partial disclosure during the class period which

10  causes the price of shares to decline").  Here, the Operating Engineers' losses are "*Dura*-compliant,"

11  and fully compensable.

12         **B.     DeKalb's Trading Pattern Renders It Atypical and Inadequate**

13         DeKalb's challenge to the Operating Engineers' trading pattern has brought its own trading

14  to the forefront.  While the Operating Engineers purchased all of its UCBH shares ***before*** the truth

15  began to trickle into the market, and did not sell any of its shares until after UCBH began to make

16  partial discloses, DeKalb did the opposite.  *See Douglas v. California*, 372 U.S. 353, 360 (1963)

17  (Clark, J., dissenting) ("There is an old adage which my good Mother used to quote to me, *i.e.*,

18  'People who live in glass houses had best not throw stones.'").

19         DeKalb began selling UCBH shares on September 18, 2009 and continued until December 3,

20  2008, selling a total of 33,800 shares of UCBH common stock.  *See* Killorin Decl., Ex. A (DeKalb

21  Cert.).  Then, following the March 2009 disclosures, DeKalb ***purchased over 134,000 UCBH shares***

22  ***with the knowledge that defendants were forced to increase its loan loss reserves and had failed to***

23  _____

24  [4]     DeKalb's additional claim that "movants that sold their position prior to the end of the class
    period will face uncertainty concerning their total damages" (*see* DeKalb Opp. at 6) is similarly

25  undercut by the position it took in its opening memorandum wherein it explained the inherent
    uncertainty of losses at the lead plaintiff stage and urged the Court to adopt "approximate losses."

26  *See* DeKalb Mem. at 5 n.4 ("The losses suffered by Movant are not necessarily the same as its
    legally compensable damages, measurement of which is often a complex legal question which

27  cannot be determined at this stage of the litigation.  The approximate losses can, however, be
    determined . . . .").

28

1   *meet its earnings forecast*.  *Compare id. with, e.g.*, DeKalb Mem. at 1 (noting that the truth "started

2   to emerge beginning on March 16, 2009).  As a result, defendants will most assuredly claim that

3   DeKalb "engage[d] in transactions far beyond the scope of what a typical investor contemplates." *In*

4   *re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000).  This trading pattern

5   "subject[s] [it] to unique defenses involving its [] purchases after a potential corrective disclosure,

6   affecting issues of reliance and causation."  *See City Pension Fund for Firefighters and Police*

7   *Officers in the City of Miami Beach v. Aracruz Cellulose S.A., et al.*, Case No. 08-23317-CIV-

8   LENARD, slip op. at 11 (S.D. Fla. Aug. 7, 2009) (attached hereto as Ex. A).  To now appoint

9   DeKalb as lead plaintiff here would thus subject the class to unnecessary risk, as defendants will

10  persuasively argue that this trading activity renders DeKalb inadequate and atypical.  *Id.*; *In re*

11  *Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Ohio 2005).

12          The situation at bar is akin to that faced by Judge Algenon L. Marbley in *Cardinal Health*,

13  where the court disqualified the State of New Jersey, Department of Treasury, Division of

14  Investment as the presumptive lead plaintiff because its purchases of Cardinal Health coincided with

15  the company's revelation of the fraud.  As the *Cardinal Health* court explained:

16          [C]ompeting movants have argued that New Jersey began buying Cardinal at almost
            exactly the same time that Cardinal Health began to disclose publicly the ongoing
17          investigations.  The timing of New Jersey's purchases undermines any causal nexus
            between the Defendants' alleged misrepresentation and the resulting injury.  It will
18          be difficult to argue that the presumptive Lead Plaintiff incurred the vast bulk of its
            injury after Cardinal acknowledged that its accounting methodologies were under
19          investigation.  New Jersey's trading patterns will make it susceptible to claims that
            New Jersey did not rely on the Defendants' alleged misrepresentations when
20          purchasing Cardinal stock.  Thus, the Court finds the presumption of typicality and
            adequacy rebutted.
21
    226 F.R.D. at 310.
22
            Similarly, in *Aracruz*, Judge Joan Lenard considered whether a lead plaintiff movant could
23
    serve as lead plaintiff when it began to purchase shares after the fraud first began to be disclosed,
24
    and continued to purchase shares until the end of the class period.  The court found
25
            that the presumption that Laver is the most adequate plaintiff is successfully rebutted
26          by evidence that its atypical trading may expose the class to unique defenses.  It is
            likely that Laver will be subject to unique defenses involving its ADR purchases
27          after a potential corrective disclosure, affecting issues of reliance and causation.

28

1   *Aracruz*, slip op. at 11 (Ex. A, attached hereto).

2        Here, just as in *Cardinal Health* and *Aracruz*, DeKalb's trading patterns make it susceptible

3   to claims that it did not rely on defendants' misrepresentations when it purchased UCBH shares.

4        The fact that DeKalb is "subject to" "unique defenses" would cause substantial prejudice to

5   the class as this trading activity will certainly be exploited by capable defense counsel.  *See Rocco v.*

6   *Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) ("it has been recognized that a 'named

7   plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to

8   a unique defense, and therefore, atypical of the class under Rule 23(a)(3)'"); *In re Harcourt Brace*

9   *Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993) (same).  No doubt DeKalb will

10  attempt to downplay the risk to the class.  However, "[t]he PSLRA . . . provides that we ask simply

11  whether [a movant] *is likely to be* 'subject to' [] unique defense[s] . . . [not that] the defense is likely

12  to succeed."  *Bally*, 2005 U.S. Dist. LEXIS 6243, at *19; *see also In re Enron Corp., Sec. Litig.*, 206

13  F.R.D. 427, 455-56 (S.D. Tex. 2002) (declining to appoint lead plaintiff with the largest losses when

14  *potential* unique defense conflicts could endanger the class).  Accordingly, DeKalb should not be

15  appointed as lead plaintiff.

16  **II.     CONCLUSION**

17        For the foregoing reasons, the Operating Engineers' lead plaintiff motion should be granted

18  and the Operating Engineers should be appointed as lead plaintiff.

19  DATED:  December 4, 2009                    Respectfully submitted,

20                                             COUGHLIN STOIA GELLER
                                                 RUDMAN & ROBBINS LLP
21                                             DARREN J. ROBBINS
                                               BRIAN O. O'MARA
22

23

24                                             _____
                                                    s/ BRIAN O. O'MARA
                                                   BRIAN O. O'MARA
25
                                               655 West Broadway, Suite 1900
26                                             San Diego, CA  92101-3301
                                               Telephone:  619/231-1058
27                                             619/231-7423 (fax)

28

OPERATING ENGINEERS' REPLY MEMO IN SUPP OF ITS MOT FOR APPT OF
LEAD PLTF & APPROVAL OF SELECTION OF COUNSEL - 3:09-cv-04208-JSW         - 8 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

Document1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List, and to:

Ira M. Press
825 Third Avenue, 16th Floor
New York, NY  10022

Joe Kendall
Hamilton P. Lindley
Kendall Law Group, LLP
3232 McKinney Avenue, Suite 700
Dallas, TX  75204

Ralph M. Stone
Amanda C. Scuder
Shalov Stone Bonner & Rocco LLP
485 Seventh Avenue, Suite 1000
New York, NY  10018

Howard G. Smith
Law Offices of Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA  19020

Cynthia J. Billings
Sullivan, Ward, Asher & Patton, P.C.
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI  48075

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 4, 2009.

s/ BRIAN O. O'MARA
BRIAN O. O'MARA

COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  bomara@csgrr.com

## Mailing Information for a Case 3:09-cv-04208-JSW

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@btkmc.com,knguyen@btkmc.com

- **Jacqueline Scott Corley**
  corley@kerrwagstaffe.com,hanna@kerrwagstaffe.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Phillip P Kim**
  pkim@rosenlegal.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Mark Cotton Molumphy**
  mmolumphy@cpmlegal.com,jthigpen@cpmlegal.com,oszeto@cpmlegal.com,bgoldman@cpmlegal.com,jacosta@cpmlegal.com

- **Brian O. O'Mara**
  bo'mara@csgrr.com

- **Erik David Peterson**
  epeterson@btkmc.com

- **Anthony David Phillips**
  aphillips@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Ira Neil Richards**
  irichards@trrlaw.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Adrian James Sawyer**
  sawyer@kerrwagstaffe.com,murphy@kerrwagstaffe.com

- **Dustin Lamm Schubert**
  dschubert@schubertlawfirm.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Anna Erickson White**
  awhite@mofo.com,npan@mofo.com,avickery@mofo.com,jkim@mofo.com

- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com,travisd@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,e_file_sd@csgrr.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Jennifer Agnew
1717 Arch Street
Suite 3838
Philadelphia, PA 19103

Kenneth I. Trujillo
Trujillo Rodriguez & Richards LLC
1717 Arch Street
Suite 3838
Philadelphia, PA 19103
```