1   Laurence M. Rosen (SBN # 219683)
    **THE ROSEN LAW FIRM, P.A.**
2   333 South Grand Avenue, 25th Floor
    Los Angeles, CA 90071
3   Telephone:  (213) 785-2610
    Facsimile:   (213) 226-4684
4   Email: lrosen@rosenlegal.com

5   and

6
    Phillip Kim, Esq.
7   **THE ROSEN LAW FIRM, P.A.**
    350 Fifth Avenue, Suite 5508
8   New York, New York 10118
    Telephone:  (212) 686-1060
9   Facsimile:   (212) 202-3827
    Email: pkim@rosenlegal.com
10

11  [Proposed] Lead Counsel for Plaintiffs

12              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
13              SAN FRANCISCO DIVISION

14
15  GUOHUA ZHU, INDIVIDUALLY AND ON          )   Case No.        CV 09-04208-JSW
    BEHALF OF ALL OTHERS SIMILARLY           )
16  SITUATED,                                )   **KYUNG CHO'S REPLY TO**
                                             )   **COMPETING LEAD PLAINTIFF**
17                          Plaintiff,        )   **MOTIONS**
                                             )
18              vs.                          )   CLASS ACTION
                                             )
19  UCBH HOLDINGS, INC., THOMAS S. WU, AND   )   **Hon. Jeffrey S. White**
    EBRAHIM SHABUDIN,                        )
20                                           )   Hearing Date: December 18, 2009
21                          Defendants.       )   Time: 9:00 a.m.
                                             )   Courtroom: 11, 19th Floor
22                                           )
                                             )
23                                           )
                                             )
24  *Caption continues*                       )
                                             )
25                                           )

26
27
28

                                1

| | | |
|---|---|---|
| HUY TRAN, Individually and Behalf of All Others Similarly Situated, | ) ) ) | Case No.        CV 09-04429-JSW |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| UCBH HOLDINGS, INC., THOMAS S. WU, AND CRAIG ON, | ) ) ) | |
| Defendants. | ) ) ) ) | |

| | | |
|---|---|---|
| WATERFORD TOWNSHIP GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No.        CV 09-04449-MHP |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| UCBH HOLDINGS, INC., THOMAS S. WU, CRAIG S. ON and EBRAHIM SHABUDIN, | ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| SALVADOR PEREZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.        CV 09-04492-JSW |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| UCBH HOLDINGS, INC., THOMAS S. WU, CRAIG S. ON and EBRAHIM SHABUDIN, | ) ) ) | |
| Defendants. | ) ) ) ) | |
| *Caption continues* | ) ) | |

KYUNG CHO'S REPLY TO COMPETING LEAD PLAINTIFF MOTIONS—Civil Action No. CV 09-04208-JSW

| | | |
|---|---|---|
| 1 | DANIEL NYGAARD, WENDY FONG, and JAMES ELAM, on Behalf of Themselves and All Others Similarly Situated, ) | Case No.        CV 09-04505-VRW |
| 2 | | |
| 3 | Plaintiffs, ) | CLASS ACTION |
| 4 | | |
| 5 | vs. ) | |
| 6 | UCBH HOLDINGS, INC., THOMAS S. WU, CRAIG S. ON and EBRAHIM SHABUDIN, ) | |
| 7 | | |
| 8 | Defendants. ) | |

DANIEL NYGAARD, WENDY FONG, and
JAMES ELAM, on Behalf of Themselves and  All
Others Similarly Situated,

          Plaintiffs,

          vs.

UCBH HOLDINGS, INC., THOMAS S. WU,
CRAIG S. ON and EBRAHIM SHABUDIN,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.        CV 09-04505-VRW

CLASS ACTION

DOMINIQUE DURBIN, Individually and Behalf
of All Others Similarly Situated,

          Plaintiff,

          vs.

UCBH HOLDINGS, INC., THOMAS S. WU, AND
CRAIG ON,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.        CV 09-04513-JSW

CLASS ACTION

## KYUNG CHO'S REPLY TO COMPETING LEAD PLAINTIFF MOTIONS

## I.    PRELIMINARY STATEMENT

Remaining before the Court are three[1] competing movants for appointment as lead plaintiff as follows:

| Movant | Claimed Losses[2] |
|---|---|
| Kyung Cho | $1,741,124.63 |
| Pension Trust Fund for the Operating Engineers ("Operating Engineers") | $770,784.04 |
| Dekalb County Pension Fund ("Dekalb") | $759,578.54 |

---

[1]   The five other movants that originally sought appointment as lead plaintiff have either abandoned their motion by failing to file an opposition, withdrawn (docket nos. 54, 82) or have acknowledged that they do not have the largest financial interest (docket nos. 62, 66, and 69).

[2]   As to make an apples-to-apples comparison, the loss figures utilize a PSLRA lookback price.

3

There is a "clear path that the district court must follow in selecting the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). After determining that notice of the action is appropriate and timely, the district court "must compare the financial stakes of the various plaintiffs and determine which one has the greatest financial stake in the lawsuit.[3] The Court must then focus its attention on *that* plaintiff with the largest financial interest, here Kyong Cho, and determine, based on the information he provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.*, at 730 (emphasis in original). Importantly, "a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id.*, at 732. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.*

Utilizing this required procedure for appointment of lead plaintiff confirms that Kyung Cho, who has the *largest financial loss and has expended the largest amount of net funds on UCBH stock* of any movant, is the presumptive lead plaintiff and the Court should grant his motion for appointment as lead plaintiff.

## II.    CHO SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    CHO IS THE MOST ADEQUATE PLAINTIFF

Cho has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). With over $1.7 million in losses and $2.5 million net funds expended, Cho has the largest financial interest of the competing movants by over double—Operating Engineers (only $770,000 loss, $771,000 net funds expended) and Dekalb (only $759,000 in loss, $1.0 million net funds expended).

Once the Court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Id.* at 730, 732 ("If the plaintiff with the largest financial stake in the controversy

---

[3]   There is no dispute that the notice published by the Rosen Law Firm provided timely and proper notice of this action.

provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("The initial inquiry (*i.e.,* the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy.").

Cho made a *prima facie* showing of his adequacy and typicality in his opening and opposition papers.  Cho has also submitted a Declaration outlining his impressive professional qualifications and experience, further demonstrating his adequacy and typicality.  *See* Declaration of Laurence Rosen ("Rosen Decl."), Ex. 1.  Cho is a practicing board certified neurologist and medical researcher residing in Los Angeles County, CA.  *Id.*, at ¶ 2.  Cho is also the Chairman and CEO of MITAA Wilshire Investment Group, LLC ("MITAA")—a privately-held real estate management company operating primarily in Southern California.  In that role, Cho gained substantial experience hiring and managing attorneys.  *Id.*  MITAA has never had a banking relationship with UCBH.  *Id.*

Cho purchased his securities for his own personal account and has been investing in stocks of public companies the last six years.  *Id.*, at ¶ 3.  Cho confirmed that: (a) he is aware of his fiduciary responsibilities as lead plaintiff, (b) he will continue to oversee this action and direct counsel; (c) that he conferred and met with his counsel personally prior to making his lead plaintiff motion; and (d) based on his inquiries he believes the Rosen Law Firm is well qualified and should be appointed Lead Counsel. *Id.*, ¶¶ 3-10.  Clearly, there is no doubt that Cho is more than adequate to serve as Lead Plaintiff. [4]  Consequently, Cho is entitled to the presumption that he is the most adequate plaintiff under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at  729-30.

---

[4]  Operating Engineers has made no showing that the person responsible for oversight of this action, presumably Thomas Hendricks (the person who signed its certification) has some special business acumen or knowledge greater than Cho. In fact, little is known of Mr. Hendricks or any officers or directors of Operating Engineers, other than that they are operators of heavy construction equipment.

5

**B. THE PRESUMPTION IN FAVOR OF APPOINTING CHO AS LEAD PLAINTIFF HAS NOT BEEN REBUTTED**

Once the statutory presumption has attached, it cannot be rebutted through relative comparison. *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004); *see also Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff"). A lead plaintiff motion is not a beauty contest. Indeed, that "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23." *Id.*, at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *see also Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation"); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence ….").

Operating Engineers has challenged the adequacy and typicality of Cho through empty speculation and innuendo. None of these hollow arguments rise to the level of proof necessary to demonstrate that Cho will not adequately represent and protect the interest of the class.

### 1. The Rosen Law Firm Was Properly Retained

Operating Engineers speculates that because the Rosen Law Firm issued two notices over the newswires about this case, that somehow Cho is inadequate and that his motion is the product of lawyer-driven litigation. Operating Engineers' conclusory and unfounded attacks on Cho merely evidence the depths some law firms will stoop to in order to secure the "prize" of being lead counsel. Operating Engineers' speculative assertions do not bear at all on the ability of Cho or his counsel to represent the class. The Court should recognize these attacks for what they are and reject them.

Cho sought to take a lead role in this action voluntarily and on a fully-informed basis because he *personally* suffered a $1.7 million loss in purchasing UCBH stock.  As demonstrated in his Declaration, Cho is a well-educated and sophisticated business person with hands-on experience in directing and managing counsel.  Prior to making his motion, Cho met with his selected counsel, the Rosen Law Firm in person to discuss, among other things, the responsibilities of being a lead plaintiff, the details of the case, and what should be expected going forward.  Rosen Decl., Ex. 1.  That Cho learned of this class action from notices issued by the Rosen Law Firm and others, does not impugn his or his counsel's adequacy to represent and protect the interests of the class.  Indeed, the whole point of the PSLRA notice provision is to advise class members of the lawsuit and their right to seek appointment as lead plaintiff.

The Coughlin firm's citation *In re Network Associates, Inc. Sec. Litig.*, 76 F. Supp.2d 1017, 1032 (N.D. Cal. 1999), is off the mark and actually contradicts their own position.  There, the court criticized the use of *certification* form notices used in unsolicited direct mailings to shareholders that looked like too much like claim forms.  The court explained:  "As for the forms, they looked too much like claim forms and the recipients could easily have thought that they needed to sign up to participate at all."  *Id.*  The notices issued by the Rosen Law Firm are not misleading, do not resemble claims forms, were not the highly regulated forms of direct-targeted solicitations, and did not create an impression that class members were required to participate, as in *Network Associates*.

Additionally, the notion that what the Rosen Law Firm did was wrong flies in the face of the PSLRA and the agency whose job it is to interpret and apply the federal securities laws.  Judge Alsup explained in *Network Associates*:

> The undersigned then asked the SEC for its views. In its excellent amicus submission, the SEC concludes that Section 78o(c)(8) prohibits payment for the value of referring

7

potential clients but not for merely reimbursing for reasonable expenses. **The SEC notes that "the effect of mailings could be to encourage additional investors to come forward, negotiate with and retain counsel [of their own] and move to be lead plaintiff, thereby enhancing competition for lead plaintiff and lead counsel" (Br.31). The Court agrees. Like the SEC, however, the Court does not bless the particular mailings used in this case, as explained below. Because of the importance of the issue, the Commission's amicus brief is appended to this opinion.**

76 F. Supp.2d at 1031-1032 (emphasis added); *see also Knisely v. Network Assocs., Inc.*, 77 F. Supp.2d 1111, 1114-15 (N.D. Cal. 1999) (holding that a lead plaintiff movant with largest financial interest was not inadequate because its responded to a direct mailing, and that allegations of violations of the securities laws and ethics rules were "unavailing."); *In re Oppenheimer Rochester Funds Group Sec. Litig.*, 2009 WL 4016635, at * 5, *7, *9 (D. Colo. Nov. 18, 2009) (rejecting arguments that the fact notices sent to potential class members by law firm rebutted most adequate plaintiff presumption); *see also In re Resource America Secs. Litig.*, 202 F.R.D. 177, 187 (E.D. Pa. 2001) (at class certification stage appointing class representative who chose counsel after responding to notice on internet).[5]

---

[5]   Beyond the PSLRA and securities class actions, courts have found that advertisements and proper solicitation of class members is Constitutionally protected.  *See, e.g.*, *Rubery v. Buth-Na Bodhaige, Inc.*, 514 F. Supp.2d 431, 434 (W.D.N.Y. 2007) (in denying challenge to plaintiffs' counsel based upon mass-mailing of advertisement "letter notices" to purported class members, the Court found that "it is well settled that attorney advertisements such as the Letter Notice are protected by the First Amendment, so long as they are "not false or deceptive and [do] not concern unlawful activities."); *Best Buy Stores, L.P. v. Superior Court*, 137 Cal. App.4th 772, 777 (Cal. App. 2006) (letter to prospective class members used to find a replacement class representative could not be prohibited)); *Parris v. Superior Court*, 109 Cal. App.4th 285, 292-299  (Cal. App. 2003) (requirement of judicial approval for parties' communication with potential class members, which included an advertisements for the services of the plaintiffs' lawyers, before certification of class would be prior restraint of speech); *House of Sight & Sound, Inc. v. Faulkner*, 912 P.2d 357 (Okla. App. 1995) (affirming denial of request to enjoin advertisement for a class action, in part, because there was evidence that the injunction would have a negative impact on other persons potentially interested in the class action suit and the injunction would violate attorneys' right of free speech); *Deltona Corp. v. Est. of Bobinger*, 582 So.2d 736, 737 (Fla. Dist. App. 1991) (in affirming trial court's order in so far as it permitted plaintiff to send direct mail solicitations to members of the prospective class in order to inform

8

Other courts concur that even direct-mail notices to shareholders is efficient, cost-effective, and the "best practicable notice under the circumstances." *See Raves v. Iftikar*, 174 F.R.D. 651, 675-76 (N.D. Cal. 1997) ("Such a process of individualized notice avoids burdening the law firms with the costs associated with another round of generalized published notice while ensuring that investors with the largest stake in the outcome of the litigation are apprised of their rights.").[6]

Lastly, Coughlin's request for discovery of Cho should be denied.  As set forth above, Coughlin's allegations of improper "solicitations" by the Rosen Law Firm are unfounded.  The Cho Declaration clearly establishes that he is unusually well-qualified to serve as lead plaintiff.

---

and invite additional class members to participate, the court found *Shapero v. Kentucky Bar Assoc.*, 486 U.S. 466 (1988) applicable to class actions).

[6]   Courts have refused to distinguish between advertisements during the prosecution of the action or for the purposes of expanding or commencing a class action.  *See Parris*, 109 Cal. App.4th at  290 ("Precertification communication with potential class members, like pre-filing communication, is constitutionally protected speech.").   In denying a request to enjoin plaintiffs' counsel from representing additional plaintiffs in an opt-out class action based upon counsels' advertisements for additional potential plaintiffs, the Court in *Paris v. Lake Carroll Holdings, Inc.*, 1988 WL 74672, at *2 (N.D. Ill. July 14, 1988), rejected defendants contention that the timing of the advertisements was relevant because it could be used to "stir[] up litigation," finding:

> Furthermore, I find no distinction in decisional law dealing with lawyer advertising between advertising which occurs during the pendency of a lawsuit which might affect other potential plaintiffs and advertising conducted before the lawsuit is filed. Nor do I find any basis upon which to conclude that under the guidance given us by the Supreme Court in this area that between the two periods of advertising any different constitutional considerations are employed.

*See also Simpson Strong-Tie Co., Inc. v. Gore*, 162 Cal. App. 4th 737 (Cal. App. 2008) (based upon freedom of speech concerns, the court affirmed dismissal of a complaint arising out of allegedly false advertisements published by law firm in order to commence lawsuits against plaintiff in connection with its allegedly defective product); *Pre-Paid Legal Services Inc. v. Gilmber Law Firm*, Civ. No. 07-60084, 260 Fed. Appx. 731, 2007 WL 4561137 (5th Cir. Dec. 28, 2007) (affirming dismissal of complaint challenging the appropriateness and truthfulness of attorney advertisement utilized to solicit persons interested in commencing lawsuit against plaintiff); *Auscape Intern v. National Geographic Society*, 2002 WL 31250727, at *1 (S.D.N.Y. Oct. 8, 2002) (in considering attorney-client privilege in deciding a motion to compel discovery in a class action, the court noted extensive use of advertising by lawyers advising prospective clients concerning their potential claims).

9

Indeed this Court would be hard pressed to find a more intelligent, well-educated investor to lead this litigation. Cho is both an accomplished physician and a successful businessman. Operating Engineers' request to take discovery of Cho is a feeble attempt to intimidate and harass him; nothing more.  The Operating Engineers have failed to demonstrate any "reasonable basis" to take discovery under 15 U.S.C. § 78u-4(a)(3)(b)(iv).  *See e.g.*, *Oppenheimer Rochester Funds*, 2009 WL 4016635, at * 5.

### 2.  Coughlin's Recruitment of Clients

It is ironic that Coughlin is the one to accuse the Rosen Law Firm of improper solicitation here.  There is no reason, of course, to even reach Operating Engineers' motion because Cho is the most adequate plaintiff and this presumption has not been rebutted—with *proof*.  Given Coughlin's attacks, however, some facts regarding their conduct bear noting.

First, Coughlin has engaged in unsolicited "direct solicitations" of clients in the recent past—a highly regulated form of attorney advertising, when compared to notices issued over the internet newswires, as here.  *See* Rosen Declaration, Ex. 2.

Second, Coughlin has also issued notices in this action that were not *required* by the PSLRA as well.  The PSLRA only requires one notice to the class. 15 U.S.C. § 78u-4(a)(3)(A)(i), which the Rosen Law Firm issued on September 11, 2009 when it filed the first securities class action against UCBH.  Docket no. 50-1.  Following the filing of Coughlin's complaint entitled *Waterford Township Gen. Employees Retirement Sys. v. UCBH Holdings, Inc., et al.*, No. 3:09-CV-4449-MHP (the "Waterford Action"), on September 22, 2009 Coughlin issued a notice.  *See* Rosen Decl., Ex. 3.  This notice was not required under the PSLRA.  Listed as counsel for Plaintiff in the Waterford Action along with the Coughlin firm is the Kendall Law Group of Dallas, Texas.  The Kendall Law Group also issued a shareholder

investigative press release on September 11, 2009.  *See* Rosen Decl., Ex. 4.[7]  Operating

Engineers' criticism of Cho and his counsel is duplicitous given that its attorneys' co-counsel,

the Kendall Law Group has issued the same investigative press release.

Third, the question of lawyer-driven litigation should be focused on Coughlin and its

"free" portfolio monitoring services it provides to clients such as Operating Engineers.  District

Judge Jed. S. Rakoff of the Southern District of New York rejected a Coughlin pension fund

client as a lead plaintiff and observed that Coughlin's "free" monitoring services created a

conflict between lawyer and firm.  *See Iron Workers Local No. 25 Pension Fund v. Credit-

Based Asset*, 616 F.Supp.2d 461 (S.D.N.Y. 2009).  The nature of these arrangements is

described as follows:

> Specifically, the evidence showed the Fund had entered into a contractual arrangement with Coughlin Stoia whereby, in return for Coughlin Stoia's providing free "monitoring" of the Funds' investments, the Fund agreed that, if **Coughlin Stoia recommended bringing a securities class action and the Fund approved doing so, Coughlin Stoia would be retained, on a contingent fee basis, to represent the Fund. As Dennis Kramer, the Fund's administrator, testified:**
>
>> Q. [by the Court] ... what you've chosen to enter into, as I understand it, is a contract where the monitoring counsel will also be the counsel who represents you if a lawsuit is brought, is that right?
>>
>> A. [by Mr. Kramer] Yes, that's true.
>>
>> Q. And the only way they get paid is if they bring such a lawsuit and recover, is that right?
>>
>> A. Correct.

*Id.*, at 464 (emphasis added).  Judge Rakoff explained that the practice fostered tendencies

toward lawyer-driven litigation.  He explained in relevant part:

---

[7]  The Kendall Law Group's notice was issued prior to the PSLRA early notice issued by the Rosen Law Firm on September 11, 2009.  *Cf.* Docket no. 50-1 and Rosen Decl., Ex. 4.

11

> Going far beyond any traditional contingency arrangement of which the Court is aware, this practice, on its face, creates a clear incentive for Coughlin Stoia to discover "fraud" in the investments it monitors and to recommend to the Fund's non-lawyer administrator (and, through him, to the trustees) that the Fund, at no cost to itself, bring a class action lawsuit. In other words, the practice fosters the very tendencies toward lawyer-driver litigation that the PSLRA was designed to curtail.

*Id.,* at 464.

Absent from the proceedings before Judge Rakoff, was the actual recruitment process Coughlin and other firms use to get their pension fund clients to sign-on to receive "free" monitoring services. *Berman DeValerio & Pease LLP et al. v. Eran Rubinstein and Boltz Rubinstein*, Civ. No. 07-12127 (D. Mass.) reveals the practice of certain securities firms retaining (or maintaining internally) "consultants" whose sole function is to solicit and retain institutional clients to receive these "free" monitoring services from plaintiffs law firms. [8] *See* Rosen Decl., Ex. 5. These "consultants" go from firm to firm to the highest bidder, including Coughlin.   The two attorneys in *Eran* were paid $25,000 per month plus expenses by the Berman firm including a questionable agreement to be paid 10% of attorneys' fees collected from any prospective litigation. *Id.*, at Ex. 6.  It was alleged that the two attorneys improperly took institutional clients they cultivated during their employment with the Berman firm and jumped ship to the Coughlin Firm.  Clearly, if the portfolio monitoring programs did not effectively result in the institution agreeing to participation in class actions, the firms would not pay so much money for the solicitation services.

These portfolio monitoring practices and side agreements will create a new class of "professional plaintiffs" the PSLRA is intended to eradicate. This inevitably results in the subrogation of a lead plaintiff's interest to their counsel and prevents their adequately protecting

---

[8]   The term is used loosely.  It would be more appropriate to refer to them as "solicitors" or "runners."

12

the Class. To be sure, one merely has to consider application of these same facts, but replace the pension funds with an individual investor, and ask whether there is a conflict of interest.[9]

Given the Coughlin Firm's checkered history of improperly soliciting class action plaintiffs, the Court should disregard these attacks on Cho and his counsel as nothing more than a desperate attempt to compensate for the Operating Engineers' insufficient financial stake in this litigation.

### 3. Competing Movants' Institutional Status Does Not Trump Cho's Financial Interest

Both Operating Engineers and Dekalb argue that their "institutional status" somehow overcomes their inferior financial interest—which is less than half of the Cho's losses and net funds expended. Courts routinely rebject this argument. *See, e.g., Mohanty v. BigBand Networks, Inc.*, 2008 WL 426250, at *7 (N.D. Cal. Feb. 14, 2008) (rejecting argument that institutional status trumps larger financial stake of non-institutional lead plaintiff movant); *see also Tanne v. Autobytel*, 226 F.R.D. 659, 672 (C.D. Cal. 2005) (an institution is "not entitled under the Reform Act and controlling Ninth Circuit precedent to be appointed lead plaintiff simply because it is the most sophisticated investor or because it has the most investment or litigation experience."); *Steiner v. Aurora Foods, Inc.*, 2000 WL 33911305, at * 3 (N.D. Cal. Jun. 5, 2000) ("the PSLRA does not limit the presumption of the most adequate plaintiff to institutional investors [but] [r]ather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the

---

[9] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 270 n. 49 (3d Cir. 2001) (explaining that Congress may not have contemplated "pay to play" type arrangements in pension funds and explaining that the district court should probe these issues); *see also In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902, at * 12 (N.D. Cal. Nov. 30, 2007) (explaining phenomena of Coughlin using a union local as a serial plaintiff and the Court rejecting preliminary approval of class action settlement based on conflicts with counsel).

13

presumption of most adequate plaintiff."); *Cavanaugh*, 306 F.3d at 730, n. 20 ("If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff.").

## III.   CONCLUSION

Kyung Cho has the largest financial interest of any competing movant and has satisfied all of the PSLRA's requirements.   He is entitled to the presumption that he is the "most adequate plaintiff."   Competing movants have failed to rebut the presumption with the necessary *proof* that Cho is inadequate or atypical.   Indeed, competing movants have offered only empty speculation and baseless criticism, which is insufficient to rebut the presumption that Dr. Cho is the most adequate lead plaintiff. Accordingly, the Court should appoint him as Lead Plaintiff, approve his selection of the Rosen Law Firm, P.A. as Lead Counsel, and deny all competing lead plaintiff motions.

Dated: December 4, 2009

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen, Esq.
Laurence M. Rosen (SBN # 219683)
333 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Telephone:     (213) 785-2610
Facsimile:     (213) 226-4684
Email: lrosen@rosenlegal.com

and

Phillip Kim, Esq.
**THE ROSEN LAW FIRM, P.A.**
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone:     (212) 686-1060
Facsimile:     (212) 202-3827
Email: pkim@rosenlegal.com

14

[Proposed] Lead Counsel for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KYUNG CHO'S REPLY TO COMPETING LEAD PLAINTIFF MOTIONS—Civil Action No. CV 09-04208-JSW

1

2

**CERTIFICATE OF SERVICE**

3

I, Laurence M. Rosen, pursuant to 28 U.S.C. §1746, hereby declare under penalty of

4

perjury as follows:

5

I am the managing attorney of the Rosen Law Firm, P.A. I am over the age of eighteen.

6

On December 4, 2009, I electronically filed the following **KYUNG CHO'S REPLY**

7

**TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the

8

CM/ECF system which sent notification of such filing to counsel of record.

9

On the same date I also caused the document to be submitted to the Stanford Law

10

School Class Action Clearinghouse via email to scac@law.stanford.edu.

11

Executed on December 4, 2009.

12

13

/s/ Laurence Rosen

Laurence M. Rosen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16