**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUOHUA ZHU, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UCBH HOLDINGS, INC., THOMAS S. WU, and EBRAHIM SHABUDIN,<br><br>Defendants. | No. C 09-4208 JSW<br>No. C 09-4429 JSW<br>No. C 09-4449 JSW<br>No. C 09-4513 JSW<br>No. C 09-4505 JSW<br><br>**ORDER REGARDING MOTIONS TO CONSOLIDATE, APPOINT LEAD PLAINTIFF, AND APPOINT LEAD COUNSEL** |
| HUY TRAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UCBH HOLDINGS, INC., THOMAS S. WU, and CRAIG ON,<br><br>Defendants. | |
| DOMINIQUE DURBIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UCBH HOLDINGS, INC., THOMAS S. WU, and CRAIG ON.<br><br>Defendants. | |

<div style="margin-left: sidebar">United States District Court<br/>For the Northern District of California</div>

| | |
|---|---|
| 1 | WATERFORD TOWNSHIP GENERAL EMPLOYEES RETIREMENT SYSTEM, |
| 2 | Individually and On Behalf of All Others Similarly Situated, |
| 3 | |
| 4 | Plaintiff, |
| 5 | v. |
| 6 | UCBH HOLDINGS, INC., THOMAS S. WU, CRAIG ON, and EBRAHIM SHABUDIN, |
| 7 | Defendants. |
| 8 | |
| 9 | DANIEL NYGAARD, WENDY FONG, JAMES ELAM, Individually and On Behalf of All Others Similarly Situated, |
| 10 | |
| 11 | Plaintiffs, |
| 12 | v. |
| 13 | UCBH HOLDINGS, INC., THOMAS S. WU, CRAIG ON, and EBRAHIM SHABUDIN, |
| 14 | Defendants. |

Currently before the Court are the motions by (1) Louisiana Municipal Police Employees' Retirement System and the City of Philadelphia Board of Pensions and Retirement, (2) Firefighters' Pension System of the City of Kansas City, Missouri, Trust, (3) Mark Cooper, (4) DeKalb County Pension Fund, (5) Pension Trust Fund for Operating Engineers, and (6) Kyung Cho (collectively, "Movants") to consolidate related actions, for appointment as lead plaintiffs and for approval of their selection of lead counsel in this putative class action lawsuit alleging securities fraud and the motion for appointment as lead plaintiffs and for approval of their selection of lead counsel filed by Lap Yin Chan and Wai Shan Chan. This matter is now fully briefed and ripe for decision. The Court finds that these matters are appropriate for disposition without oral argument and the matters are deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for January 29, 2010 is VACATED.

**BACKGROUND**

Plaintiffs filed the above captioned actions against defendants UCBH Holdings, Inc. ("UCBH"), Thomas S. Wu ("Wu"), Embrahim Shabudin ("Shabudin"), and Craig On ("On"). However, on November 25, 2009, UCBH filed a Notice of Bankruptcy Filing and Automatic Stay. The Notice provides that on November 24, 2009, UCBH filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. Pursuant to 11 U.S.C. § 362(a), the filing of the petition operates as a stay as to all actions against UCBH. Therefore, to the extent these actions are consolidated and proceed, they cannot proceed against UCBH unless Plaintiffs obtain relief from the automatic stay.

During the class period from April 24, 2008 through September 8, 2009, Defendants allegedly issued materially false and misleading statements concerning UCBH's business and financial condition and hid mounting loan losses. Plaintiffs further allege that on September 8, 2009, UCBH announced the results of an internal investigation conducted by a subcommittee of UCBH's audit committee, that UCBH was required to restate its financial statements, and that UCBH had reached a consent agreement with the Federal Deposit Insurance Corporation and Department of Financial Institutions relating to a cease and desist order concerning the improprieties alleged in these actions. Plaintiffs contend that as a result of these disclosures, UCBH's stock fell over 60%.

Plaintiff Guohua Zhu filed an initial complaint on September 11, 2009, titled *Zhu v. UCBH Holdings, Inc. et al.,* C 09-4208 ("Zhu action"). The complaint set forth a federal securities class action on behalf of all purchasers of publically traded UCBH securities, alleging false and misleading statements and a scheme to defraud by the named defendants. On that same day, Zhu's counsel published a notice of this first-filed complaint in *Market Wire*, advising members of the proposed class of their right to move to serve as lead plaintiff or plaintiffs no later than sixty days from the issuance of the notice. Five similar and related complaints were then filed in this district, but one was subsequently dismissed voluntarily. Plaintiffs now move to consolidate these cases and request the Court to appoint a lead plaintiff to represent the class and to approve lead plaintiff's selection of counsel.

## ANALYSIS

**I.   Consolidation.**

Movants seek to consolidate the above captioned actions pursuant to Federal Rule of Civil Procedure 42.  Pursuant to that rule:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  The Court has broad discretion in determining whether or not to consolidate actions.  *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806-807 (N.D. Cal. 1989).  In determining whether or not to consolidate cases, the Court should "weigh the interest of judicial convenience against the potential for delay, confusion and prejudice."  *Id.* at 807.  No party has filed an opposition to the motions to consolidate.  The Court finds that consolidation is warranted here and therefore grants the motions to consolidate these actions for all purposes, with the Zhu action being the lead case.  Civil Action No. C 09-4208 JSW shall constitute the Master File for every action in the consolidated action.

**II.   Lead Plaintiff**

   **A.   Standard**

The selection of lead plaintiff and approval of lead counsel must comply with the requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"). The PSLRA provides that "the court shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of the class members."  15 U.S.C. § 78u-4(a)(3)(B)(I).  Through a three-step process, the PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. at § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (recognizing that the "'most capable' plaintiff – and hence the lead plaintiff – is the one who

4

has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23."). The selection process begins once the first plaintiff files an action and publicizes the pendency of the action, the claims made, and the purported class period. 15 U.S.C. § 78u-4(3)(A)(i)(II). The PSLRA is unequivocal and allows for no exceptions. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454-55 (S.D. Tex. 2002); *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999). "The plain language of the statutes precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed." *Id*. The intent of the provisions is to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process. *Id.* at 818-19. Thus, filing the complaint or a timely motion is the threshold requirement to serve as lead plaintiff.

The second factor requires the court to choose the plaintiff "who has the greatest financial stake in the outcome of the case." *In re Cavanaugh*, 306 F.3d at 729. The PSLRA imposes a rebuttable presumption that the most capable plaintiff is the class member with the largest financial interest in the relief sought by the class. *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999). This determination is made by comparing the financial stakes of the various plaintiffs through "accounting methods that are both rationally and consistently applied" to establish which one has the most to gain from the lawsuit. *Id.* at 730. Once such a plaintiff is identified, the PSLRA dictates that the Court evaluate whether that plaintiff satisfies the requirements of Rule 23(a). *Id.*

Rule 23(a) requires that the plaintiff must assert claims or defenses that are typical of the claims or defenses of the class and the court must find that the representative parties will fairly and adequately protect the interests of the class. *In re Cavanaugh*, 306 F.3d at 730 n.5 (citing Fed. R. Civ. P. 23(a)). Although the inquiry at this stage of the litigation is not as searching as the one triggered by a motion for class certification, the proposed lead plaintiff must make at least a preliminary showing that it meets the typicality and adequacy factor. *Cf. In re Microstrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000). Typicality is achieved where the named plaintiff's claims arise from the same event or course of conduct

1  that gives rise to the claims of the other class members and the claims are based on the same
2  legal theory. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz
3  v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The adequacy requirement is met if there are
4  no conflicts between the representative and class interests and the representative's attorneys are
5  qualified, experienced, and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4); *see
6  also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The plaintiff with the largest
7  financial stake in the controversy, who satisfies the typicality and adequacy requirements is
8  presumed to be the most adequate plaintiff. *In re Cavanaugh*, 306 F.3d at 730.

The third step of the process is to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cavanaugh*, 306 F.3d at 730. The presumption of adequacy may be rebutted upon proof that the presumptively most adequate individual or entity does not satisfy Rule 23's requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cavanaugh*, 306 F.3d at 729 n.2. If the presumption is defeated, then the court must turn to the plaintiff with the next highest financial stake in the litigation and start the process over, repeating it sequentially until all challenges have been exhausted.

### B. The Competing Motions

There are a number of individuals and entities vying for appointment as lead plaintiff in this action. Among the moving parties, Kyung Cho ("Cho") has the largest financial interest at stake, claiming loses of $1,741,124.63 using a "lookback price." None of the other moving parties dispute this claim, but they have attempted to rebut the presumption of adequacy. Both DeKalb County Pension Fund ("DeKalb") and Pension Trust Fund for Operating Engineers ("Operating Engineers") contend that as institutional investors, they should be appointed lead plaintiff. However, DeKalb's and Operating Engineers' status as institutional investors do not provide any presumption that they would be more adequate lead plaintiffs than an individual investor with a larger financial interest. *See Mohanty v. Bigband Networks, Inc.*, 2008 U.S. Dist. LEXIS 32764, *17-18 (N.D. Cal. Feb. 14, 2008); *see also In re Cavanaugh*, 306 F.3d 726, 737 n. 20 (9th Cir. 2002) ("If financial sophistication had been Congress's principal concern, it

6

1 would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff. 2 Congress must also have been animated by the common-sense notion that the plaintiff with the 3 largest personal stake in the controversy will have the incentive to obtain the best possible result 4 for the class of which he is a member.) (emphasis in original). In fact, despite the legislative 5 history of the PSLRA indicating that encouraging institutional investors to take a more active 6 role may have animated passage of the Act, the Ninth Circuit specifically rejected an adequacy 7 standard that requires the district court to select the plaintiff it believes is the most sophisticated 8 investor available. *In re Cavanagh*, 306 F.3d at 737. The court reasoned that to do so "would 9 put the legislative history cart before the statutory text horse." Therefore, the Court finds that 10 Cho's status as an individual investor does not rebut the presumption of adequacy.

11 Second, DeKalb and Operating Engineers argue that Cho's lawsuit is lawyer-driven 12 because his counsel issued two press releases. The first one, sent out the day before his counsel 13 filed the first lawsuit, announced that the Rosen Law Firm was commencing an investigation 14 into allegations that UCBH violated the federal securities laws by issuing false and misleading 15 statements to investors. The Rosen Law Firm stated that it was preparing a class action lawsuit 16 on behalf of investor who purchased UCBH securities during the period from April 24, 2008 17 through September 4, 2009 and invited purchasers of UCBH securities to contact the Rosen 18 Law Firm for more information. (Declaration of Brian O. O'Mara, Ex. 1.) Operating Engineers 19 contends that the press release was misleading because "on information and belief" the Rosen 20 Law Firm did not yet represent any purported class members. (Operating Engineers' Mem. in 21 Further Support of its Motion, 6 n.6.) However, there is currently no evidence before the Court 22 to indicate that the press release was false or misleading. The second press release was an 23 investor notice, reminding investors in UCBH of the deadline to seek to be a lead plaintiff in the 24 purported class action. (*Id*., Ex. 2.)

25 The Court finds that these two press releases are insufficient to demonstrate that Cho's 26 lawsuit is lawyer-driven or, more relevant to this matter, that Cho would be an inadequate class 27 representative. The authority cited by Operating Engineers does not demonstrate that an 28 individual represented by a law firm that sent out press releases informing investors of the

7

potential lawsuit and of the deadline to seek to be lead plaintiff renders the individual to be inadequate. *See Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529 (N.D. Tex. 2005); *see also In re Network Associates, Inc. Sec. Litig.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999).

In *Ogden*, the court denied a motion for class certification under the more rigorous standard applicable to such motions. The court determined that Ogden lacked the requisite factual knowledge of her own claims, had relied on her counsel to make many of the decisions involved in pursuing her claims, had done little to no research regarding the suitability of her attorneys' acting as class counsel, and failed to appear at the hearing regarding class certification. In addition, the court found that Ogden's lack of involvement in soliciting and monitoring her attorneys was problematic due to the requirement that a class representative show "an inclination to take an active role in monitoring class counsel's activities." *Ogden*, 225 F.R.D. at 535-36 (internal quotation marks and citation omitted). In contrast here, Operating Engineers believes, at most, that Cho responded to one of the Rosen Law Firm's notices. Operating Engineers has not submitted any evidence demonstrating that Cho has not and will not monitor his counsel or that Cho lacks knowledge of his claims.

As the court in *In re Network Associates* notes, merely sending a notice to potential investors is not necessarily problematic. The court quoted the following excerpt from a Securities and Exchange Commission amicus brief: "the effect of mailings could be to encourage additional investors to come forward, negotiate with and retain counsel [of their own] and move to be lead plaintiff, thereby enhancing competition for lead plaintiff and lead counsel." *In re Network Assoc.*, 76 F. Supp. 2d at 1031. However, the court critiqued the particular notices and forms sent out by one firm because the statutory notices "were expanded into puff pieces steering investors toward registering with counsel and steering them away from independently seeking the role of lead plaintiff, as the PSLRA intended" and the forms "looked too much like claim forms and the recipients could easily have thought that they needed to sign up to participate at all." *Id.* at 1032. The notices sent out by the Rosen Law Firm do not appear

8

1 to steer investors away from independently seeking the role of the lead plaintiff and do not
2 resemble claim forms.[1]

3    In another case, the court rejected an argument by the defendants that the proposed lead plaintiff was an inadequate class representative because he became involved in the case only after seeing a notice placed by attorneys on the Internet, he did not read the complaint prior to signing the certification, and he was unaware of any of the underlying facts. *In re Resource America Securities Litigation*, 202 F.R.D. 177, 187 (E.D. Pa. 2001). The proposed lead plaintiff countered that he had a basic understanding of the allegations made in the case and what law was alleged to have been violated, and that he would be willing to contest an action by his attorneys with which he did not agree. *Id*. The court concluded that the proposed lead plaintiff was an adequate class representative. *Id*. at 188.

   Therefore, the Court finds that none of the other would-be lead plaintiffs have pointed to anything to rebut effectively Cho's entitlement to lead plaintiff status. Moreover, Cho has met his statutory obligation by providing a sworn certificate attesting to his losses in UCBH securities and his desire to represent the class. Cho's claims are typical of the claims of other plaintiffs; all claims based on similar types of alleged misrepresentations and omissions. There has been no argument from any of the movants that Cho does not meet the typicality requirement. The Court finds that Cho meets the adequacy and typicality requirement, and appoints Cho as the Lead Plaintiff in this Action.

///
///

---

[1] The Court DENIES Operating Engineers' request to conduct discovery on Cho's adequacy. In order to conduct discovery pursuant to the PSLRA regarding whether a member of a purported class is the most adequate plaintiff, a movant must "first demonstrates a reasonable basis" for its assertions of inadequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv). Courts are to "take care to prevent the use of discovery to harass presumptive lead plaintiffs," something the Reform Act was "meant to guard against." *See In re Oppenheimer Rochester Funds Group Sec. Litig.*, 2009 WL 4016635, *5 (D. Colo. Nov. 18, 2009) (quoting *In re Cendent Corp. Litig.*, 264 F.3d 201, 270 n. 49 (3d Cir. 2001). The court in *In re Oppenheimer Rochester Funds Group* found allegations more egregious than the ones asserted here, including that the proposed lead plaintiff was solicited by law firms, to fall short of this standard. *Id*. This Court concurs and finds that Operating Engineers fails to make a sufficient showing to warrant discovery on this issue.

9

### III. Lead Counsel

The PSLRA provides that once the most adequate plaintiff is selected, the "most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 784-u(a)(3)(B)(v). The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court. *See Wenderhold*, 188 F.R.D. at 587 (holding that the court is charged with ensuring that the class receives quality representation at a fair price and cannot, therefore, simply defer to lead plaintiff's choice of counsel); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071-72 (C.D. Cal. 1999) (holding that the legislative history of the PSLRA reveals that Congress vested the district courts with the authority to appoint lead counsel); *see also Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1315 (M.D. Fla. 2000) (stating that, in the exercise of its discretion regarding approval of lead counsel, the court must inquire about the "appropriateness of the appointment of more than one law firm").

Cho has selected and retained the Rosen Law Firm as lead counsel. The Rosen Law Firm appears to have the requisite ability and expertise to prosecute and manage this litigation effectively. The Court approves Mr. Cho's retention of The Rosen Law Firm and appoints them as Lead Counsel for the plaintiff class.

Lead Plaintiff's Counsel shall have authority to speak for, and enter into agreements on behalf of, plaintiffs and putative class members in all matters regarding litigation including, but not limited to, pretrial procedures, discovery, motion practice, trial, and settlement negotiations. Lead Plaintiff's counsel shall manage the prosecution of this litigation in an efficient and orderly fashion to avoid duplicative or unproductive activities. Defendants' counsel may rely upon agreements made with Lead Plaintiff's Counsel, and all such agreements shall be binding on all plaintiffs. Lead Plaintiff's Counsel additionally shall be responsible for coordination of all activities and appearances on behalf of plaintiffs and for dissemination of notices and orders, and shall be responsible for communications with the Court. Finally, Lead Plaintiff's Counsel shall maintain a master service list of all parties and counsel.

///

10

### IV. Pleadings and Motions

If related actions are subsequently filed in or transferred to this District, Defendants are not required to respond to the complaint in any action consolidated into this action, other than a consolidated complaint or a complaint designated as the operative complaint. Ordinarily, the Court would order Lead Plaintiff shall designate the instant Complaint as the operative complaint or file an amended complaint within thirty (30) days after the filing of this Order, unless otherwise agreed upon by the parties. However, although the Court ruled that this matter should not be stayed pending the bankruptcy proceedings against UCBH, the bankruptcy trustee has requested more time to address whether UCBH's interests would be harmed by these actions proceeding against the individual defendants and whether proceeding against the individual defendants would be in the interests of judicial economy and conserving the parties' resources. Therefore, the Court directs the parties to address the issue of the stay and whether this case should proceed against the individual defendants at the case management conference scheduled for February 26, 2010.

Counsel for the parties shall notify their clients of their document preservation obligations pursuant to the federal securities laws and the Local Rules. Any counsel of record for a party in this action who is not a member of the Bar of this District shall apply to appear *pro hac vice* in accordance with the Civil Local Rule 11-3.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Appoint Cho as Lead Plaintiff and for Appointment of Lead Counsel pursuant to Section 21 D (a)(3)(B) of the Securities Exchange Act of 1934.

**IT IS SO ORDERED.**

Dated: January 27, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11