1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   KYUNG CHO, ET AL., Individually and On
    Behalf of All Others Similarly Situated,

10                                                          No. C 09-4208 JSW

            Plaintiffs,

11
                                                          **ORDER REGARDING MOTIONS**
12      v.                                                **TO DISMISS THIRD AMENDED**
                                                          **COMPLAINT**
    UCBH HOLDINGS, INC., ET AL.,

13

            Defendants.

14
    _____/

15

16          Now before the Court are the motions to dismiss the Consolidated Third Amended

17   Complaint ("CTAC") filed by Defendants Thomas Wu ("Wu") (doc. no. 222); Burton D.

18   Thompson ("Thompson") (doc. no. 239); Daniel M. Gautsch, Douglas Mitchell and Robert

19   Nagel (doc. no. 225); Ebrahim Shabudin ("Shabudin") (doc. no. 232); John M. Kerr ("Kerr")

20   (doc. no. 220); Dennis Wu, Joseph J. Jou, Pin Pin Chau, Li-Lin Ko, Godwin Wong, David Ng,

21   Daniel P. Riley and Richard Li-Chung Wang (the "Director Defendants") (doc. no. 227); Craig

22   On ("On") (doc. no. 228), Thomas Yu ("Yu") (doc. no. 263), and John Cinderey ("Cinderey")

23   (doc. no. 252).  The Court has considered the parties' papers, relevant legal authority, and it

24   finds these matters suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).

25   Accordingly, the hearing set for August 31, 2012 is VACATED.  For the reasons set forth

26   below, the Court grants in part and denies in part the motions to dismiss.[1]

27

28          [1] The Court GRANTS Yu's motion for an extension of time to file his responsive
    pleading.  The Court GRANTS the requests for judicial notice filed by Defendant Wu and by
    Plaintiffs pursuant to Federal Rule of Evidence 201. (Doc. nos. 224, 240 and 255.)  However,
    taking of judicial notice that the documents were filed does not include the taking of judicial
    notice of the accuracy of their contents.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**BACKGROUND**

Plaintiffs filed several putative securities class actions which the Court consolidated pursuant to Federal Rule of Civil Procedure 42(a) by Order dated January 27, 2010.  The actions against Defendant UCBH Holdings, Inc. ("UCBH" or the "Company") were automatically stayed upon filing of the Notice of Bankruptcy Filing and Automatic Stay on November 25, 2009.  Plaintiffs filed the operative CTAC on January 9, 2012.

Plaintiffs allege that during the class period from January 24, 2008 through September 8, 2009, Defendants issued materially false and misleading statements concerning UCBH's allowance for loan loss and provision for loan loss and falsely representing that the Company's financial reporting controls were effective.  Plaintiffs allege that UCBH's auditor, KPMG, met with examiners from the Federal Deposit Insurance Corporation ("FDIC") and California Department of Financial Institutions ("CDFI") on May 8, 2009, about the deterioration in asset quality and overall financial condition of UCBH's subsidiary, United Commercial Bank ("UCB" or the "Bank").  (CTAC ¶ 92.)  On May 13, 2009, KPMG alerted UCBH's audit committee that illegal acts may have occurred related to overvaluation of impaired and real estate owned loans, prompting the audit committee to initiate an internal investigation.  (*Id.* ¶93.)  Plaintiffs further allege that on September 8, 2009, UCBH announced the results of the internal investigation conducted by a subcommittee of UCBH's audit committee, that UCBH was required to restate its financial statements, and that UCBH had reached a consent agreement with the FDIC and CDFI relating to a cease and desist order concerning the improprieties alleged in these actions.  Plaintiffs contend that as a result of these disclosures, UCBH's stock value fell and ultimately the Bank was closed.  (*Id.* ¶ 200.)

Plaintiffs allege the following causes of action: (1) violation of Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (2) violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

///

///

///

2

**LEGAL STANDARD**

**I.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice.  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Even under the liberal pleading standard of Rule 8(a), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

Where a plaintiff alleges fraud, however, Rule 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994) (en banc) (superseded by the Private Securities Litigation Reform Act

*United States District Court*
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    ("PSLRA") on other grounds).  In the securities context, the pleading requirements are even

2    more stringent.

3    **II.      Private Securities Litigation Reform Act.**

4           "At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5

5    must satisfy the dual pleading requirements of . . . Rule 9(b) and the PSLRA." *Zucco Partners*,

6    552 F.3d at 990.  The PSLRA requires that "a complaint 'plead with particularity both falsity

7    and scienter.'"  *Id.* (quoting *Gompper v. VISX*, 298 F.3d 893, 895 (9th Cir. 2002), in turn

8    quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)).  Where a plaintiff asserts a

9    Section 20(a) claim based on an underlying violation of section 10(b), the pleading

10   requirements for both violations are the same.  *See In re Ramp Networks, Inc. Sec. Lit.*, 201 F.

11   Supp. 2d 1051, 1063 (N.D. Cal. 2002).

12          Under the PSLRA, actions based on allegations of material misstatements or omissions

13   must "specify each statement alleged to have been misleading, the reason or reasons why the

14   statement is misleading, and, if an allegation regarding the statement or omission is made on

15   information and belief, the complaint shall state with particularity all facts on which that belief

16   is formed." 15 U.S.C. §78u-4(b)(1).  In order to adequately plead scienter, the PSLRA requires

17   that the plaintiff "'state with particularity facts giving rise to a strong inference that the

18   defendant acted with the required state of mind.'" *Zucco Partners*, 552 F.3d at 991 (quoting 15

19   U.S.C. § 78u-4(b)(2)).  If the allegations are insufficient to state a claim, a court should grant

20   leave to amend, "unless it is clear that the complaint could not be saved by any amendment."

21   *Id.* at 989 (quoting *Livid Holdings Ltd. v. Solomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th

22   Cir. 2005)).

23   **III.     Motions to Dismiss for Failure to Timely Serve and for Failure to Prosecute.**

24          Pursuant to Federal Rule of Civil Procedure Rule 12(b)(5), a district court may dismiss

25   an action based on insufficient service.  To determine whether service of process is proper,

26   courts look to the requirements of Federal Rule of Civil Procedure 4 ("Rule 4").  A plaintiff

27   bears the burden of demonstrating that service is proper.  *See Brockmeyer v. May*, 383 F.3d 798,

28   801 (9th Cir. 2004).

**United States District Court**
For the Northern District of California

Under Rule 4(m), a plaintiff must serve the summons and complaint upon a defendant within 120 days.  If a plaintiff fails to effect service within 120 days, the Court has discretion to either dismiss the action without prejudice or direct that service be effected within a specified time. Fed. R. Civ. P. 4(m).  The Court applies a two-step analysis under Rule 4(m).  If a plaintiff can show good cause for the defective service, then the court must extend the time period in which to serve the defendant.  *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  At a minimum, "good cause" means excusable neglect.  *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1990).  In order to demonstrate that good cause exists, a plaintiff may be required to show the following factors: "(1) the party to be served received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) plaintiff would be severely prejudiced if his complaint were dismissed."  *In re Sheehan*, 253 F.3d at 512.

If there is no good cause for the delay, a court has discretion to dismiss without prejudice or to extend the time period.  *Id.*  There is no specific test that a court must apply in exercising its discretion.  *Id.*  Prejudice to either party is one factor that a court may consider, including statute of limitations issues.  *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 773 (9th Cir. 2004) (determining that district court should have considered prejudice both to defendant and plaintiff when exercising discretion to dismiss).  Courts may also look at whether a plaintiff has substantially complied with the service requirements of Rule 4(m).  *Tyson v. City of Sunnyvale*, 159 F.R.D. 528, 530 (N.D. Cal. 1995) (even without good cause, one-day delay in service is sufficient to demonstrate substantial compliance and dismissal was improper).

Pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action if the plaintiff fails to prosecute his or her case.  Fed. R. Civ. P. 41(b).  However, "[d]ismissal ... is a harsh penalty and should be imposed only in extreme circumstances."  *Johnson v. United States Dept. of Treasury*, 939 F.2d 820, 825 (9th Cir. 1991).  "Before imposing dismissal as a sanction, the district court must weigh several factors: the public's interest in expeditious resolution of litigation; the court's need to manage its docket; the risk of prejudice to the defendants; the public policy favoring disposition of cases on their merits; and the availability

1   of less drastic sanctions." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996).

2   Because dismissal is such a harsh penalty, the Ninth Circuit has made clear that "it should be

3   imposed as a sanction only in extreme circumstances." *Id.* Moreover, before dismissing an

4   action for failure to prosecute, "district judges have an 'obligation to warn the plaintiff that

5   dismissal is imminent.'" *Johnson*, 939 F.2d at 825 (quoting *Hamilton v. Neptune Orient Lines,*

6   *Ltd.,* 811 F.2d 498, 500 (9th Cir. 1987)).

7                                        **ANALYSIS**

8
    **I.     SUFFICIENCY OF ALLEGATIONS OF SECTION 10(b) AND RULE 10(b)-5**
9            **CLAIM.**

10          Section 10(b) of the Exchange Act  provides, in part, that it is unlawful "to use or

11  employ in connection with the purchase or sale of any security registered on a national

12  securities exchange or any security not so registered, any manipulative or deceptive device or

13  contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15

14  U.S.C. § 78j(b).  Rule 10b-5, promulgated under Section 10(b), makes it unlawful for any

15  person to use interstate commerce:  (a) to employ any device, scheme, or artifice to defraud; (b)

16  to make any untrue statement of material fact or to omit to state a material fact necessary in

17  order to make the statements made, in light of the circumstances under which they were made,

18  not misleading; or (c) to engage in any act, practice, or course of business which operates or

19  would operate as a fraud or deceit upon any person, in connection with the purchase or sale of

20  any security.  17 C.F.R. § 240.10b-5.

21          For a claim under Section 10(b) and Rule 10b-5 to be actionable, a plaintiff must allege:

22  (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which

23  the plaintiff justifiably relied; (5) that proximately caused the alleged loss. *See Binder v.*

24  *Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).  A complaint must "specify each statement

25  alleged to have been misleading, the reason or reasons why the statement is misleading, and, if

26  an allegation regarding the statement or omission is made on information and belief, the

27  complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.

28  § 78u-4(b)(2).  As discussed above, in order to avoid having the action dismissed, a plaintiff

United States District Court
For the Northern District of California

must "plead with particularity both falsity and scienter." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). The Ninth Circuit, in *Ronconi*, articulated the rule as follows:

> Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry. In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether 'particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] 'deliberate recklessness' made false or misleading statements to investors.' Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

*Id*. (citations and internal quotation marks omitted).

The Court has already held that Plaintiffs sufficiently alleged that Defendants made false or misleading statements regarding the Company's financial status and the effectiveness of the internal controls. In dismissing the consolidated amended complaint, the Court found that Plaintiffs failed to allege with particularity facts that demonstrate a strong inference of scienter as to any Defendant. Without any sufficient claims under Section 10(b) and Rule 10b-5, the Court also found that Plaintiffs failed to sufficiently allege any "control person" liability. At issue here is whether Plaintiffs' amendments to their complaint were sufficient to cure these defects.

### A.    Description of Individual Defendants

#### 1.    Thomas Wu

Defendant Thomas Wu was Chairman of the Board, President and Chief Executive Officer of UCBH and United Commercial Bank (UCB), a wholly-owned subsidiary of UCBH, from 2001 until his resignation on September 4, 2009. (CTAC ¶ 131.)

#### 2.    Ebrahim Shabudin

Defendant Ebrahim Shabudin served as Executive Vice President and Chief Operating Officer of UCBH and the Bank from 2005 until his resignation on September 4, 2009. (CTAC ¶ 132.)

**United States District Court**

For the Northern District of California

### 3.      Thomas Yu

Defendant Thomas Yu was Product Manager for Retail Lending for the Bank from 2005-2006, First Vice President, Retail Product Manager of the Bank from 2006 to February 2008, First Vice President, Manager of Credit Risk & Portfolio Management of the Bank from February 2008 to March 2009, and was Senior Vice President, Manager of Credit Risk & Portfolio Management of the Bank from March 2009 to June 2009.  (CTAC ¶ 133.)

### 4.      Craig On

Defendant On was the Chief Financial Officer and Executive Vice President of UCBH and the Bank from October 2008 through the end of the Class Period.  (CTAC ¶ 134.)  On served as the Deputy Chief Financial Officer for UCBH from May 2008 to October 2008, and as Senior Vice President and Corporate Controller from June 2005 to March 2008.  (*Id*.)

### 5.      Burton D. Thompson

Defendant Thompson was UCBH's Senior Vice President and Corporate Controller from August 1, 2008, to the end of the Class Period.  (CTAC ¶ 141.)  Thompson exercised direct day-to-day control over UCB and UCBH's financial operations and financial reporting. (*Id*.)

Plaintiffs have clarified that they are only bringing a control persons claim against Thompson under Section 20(a), and not a claim for primary violations under Section 10(b). (Opp. to Thompson's Mot. at 1 n.1.)

### 6.      John Cinderey

Defendant John Cinderey was the Company's and Bank's Executive Vice President and Director of Commercial Banking from January 2008 through the end of the Class Period.  Prior to his appointment to those positions, he had served as the Company's and Bank's Senior Vice President and Director of Real Estate Lending since 2006.  (CTAC ¶ 142.)

Plaintiffs allege that Cinderey exercised day-to-day control over the loans that are the subject of the alleged fraud.  (*Id*.)

///

8

*///*

### 7. Daniel M. Gautsch, Douglas Mitchell and Robert Nagel

Defendant Mitchell was the Company and Bank's Senior Vice President and Director of Corporate Development and Investor Relations from March 3, 2008 through the end of the Class Period. (CTAC ¶ 139.)

Defendant Gautsch was the Company and Bank's Executive Vice President and Chief Risk and Compliance Officer from August 23, 2006 through the end of the Class Period. (*Id.* ¶ 138.) As Chief Risk Officer, Gautsch had direct supervisory responsibility over the Internal Asset Review Department ("IARD") function. (*Id.*)

Defendant Nagel was the Company and Bank's Senior Vice President and Chief Audit Executive from July 14, 2008 to the end of the Class Period. (*Id.* ¶ 136.) He also served on the Company and Bank's compensation committee during his tenure. (*Id.*) As the Chief Audit Executive, Nagel had responsibility for and special knowledge of the IARD. (*Id.*)

Plaintiffs have clarified that they are only bringing control persons claims against Gautsch, Mitchell and Nagel under Section 20(a) , and not for primary violations under Section 10(b). (Opp. to Gautsch, Mitchell and Nagel's Mot. at p.i n.1.)

### 8. John M. Kerr

Defendant Kerr served as UCBH's Executive Vice President and Chief Credit Officer from January 1, 2008 to September 11, 2008, when he was appointed Executive Vice President and Director of Portfolio Management and Credit Compliance. On January 9, 2009, he was appointed Executive Vice President and Chief Lending Officer. Kerr served in this position until he resigned on or about June 30, 2009. (CTAC ¶ 137.)

Kerr exercised day-to-day supervisory control over the process of evaluating and reserving for impaired loans. (*Id.*) Plaintiffs also allege that Kerr supervised UCB's lending officers, including those persons the Material Loss Review ("MLR") found had falsified documents. (*Id.*) However, in light of the fact that the MLR did not identify these individuals, it is not clear what facts upon which Plaintiffs rely in support of this allegation.

**United States District Court**
For the Northern District of California

9

United States District Court

For the Northern District of California

### 9.   Director Defendants

Defendants Dennis Wu, Joseph J. Jou, Li-Lin Ko, Godwin Wong, David Ng, and Richard Li-Chung Wang served as directors of UCBH during the entire Class Period, and Defendants Pin Pin Chau and Daniel P. Riley served as directors during part of the Class Period (collectively, "Director Defendants").  (CTAC ¶¶ 135, 143-45, 147-150.)  Dennis Wu also was employed by UCBH and the Bank as Executive Vice President and CFO from June 2005 through March 3, 2008.  (*Id.* ¶ 135.)

Defendants Jou, Chau, Ko and Ng served on the Audit Committee, whose primary purpose was to assist the Board in fulfilling its responsibilities to oversee the accounting, auditing and financial reporting processes of the Company and the internal and external audit process.  (*Id.* ¶¶ 143-45, 148.)  Defendants Jou and Wong served on the Credit Committee which was responsible for approving credit policies and monitoring the overall credit risk profile for the Company and the Bank and the allowance for loan losses.  (*Id.* ¶¶ 143, 147, 163.)

Plaintiffs have clarified that they are only bringing control persons claims against the Director Defendants under Section 20(a), and not for primary violations under Section 10(b).  (Opp. to Director Defendants' Mot. at 3 n.2.)

### B.   Scienter.

"[T]o adequately plead scienter, the complaint must [ ] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  The Court must determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs, Inc. v. Makor Issues & Rights, Inc.*, 551 U.S. 308, 322-23 (2007).  "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'- it must be cogent and compelling, thus strong in light of other explanations."  *Id.* at 324.  "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."  *Id.* at 323-24.  A complaint will survive a Rule 12(b)(6)

United States District Court

For the Northern District of California

1    motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and

2    at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at

3    324.

4         "To adequately demonstrate that the defendant acted with the required state of mind, a

5    complaint must allege that the defendants made false or misleading statements either

6    intentionally or with deliberate recklessness."  *Zucco Partners*, 552 F.3d at 991.  In *Zucco*

7    *Partners*, the Ninth Circuit instructed that "following *Tellabs*, we will conduct a dual inquiry:

8    first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient

9    to create a strong inference of scienter; second, if no individual allegations are sufficient, we

10   will conduct a 'holistic' review of the same allegations to determine whether the insufficient

11   allegations combine to create a strong inference of intentional conduct or deliberate

12   recklessness."  *Id.* at 992.

13        In consideration of Plaintiffs' additional allegations, the Court finds that Plaintiffs have

14   sufficiently alleged particularized facts to support a strong inference of scienter under Section

15   10(b) with respect to Wu.  Plaintiffs again rely on allegations that the MLR prepared by the

16   FDIC demonstrate that "UCB senior executives" engaged in deliberate misconduct to conceal

17   the Bank's deteriorating financial conditions by deliberately delaying risk rating downgrades

18   and minimizing the bank's overall loan loss allowance.  While the MLR frequently attributes

19   the misconduct it found to unnamed "UCB senior executives," Plaintiffs clarify in their CTAC

20   that the MLR specifically identified misconduct by Wu.  According to the MLR, in December

21   2008, Wu delayed the issuance of a loan review report by the IARD to the Company's Board

22   for at least three months because the report contained negative performance information about

23   the loans that were reviewed.  (CTAC, ¶¶ 49-54, Ex. A (MLR Findings at p. 16, 20.)  Plaintiffs

24   further allege that the concealed IARD report accounts for some of the misrepresentations

25   regarding the Company's financial status between December 2008 and late March 2009.  (*Id*.,

26

27

28

¶¶ 79-81.)  Therefore, Plaintiffs have alleged particularized facts which are sufficient to show a strong inference of scienter by Wu.[2]

However, with respect to the other named defendants, Plaintiffs fail to allege sufficient facts to support a strong inference of scienter.  With the exception of Wu, the MLR does not identify any individual officers or executives at the UCB or UCBH.  In support of their CTAC, Plaintiffs also rely allegations in the indictments against Shabudin and Yu, the SEC complaint filed against Wu, Shabudin, On, and Yu, and the allegations in the notice filed by the Federal Deposit Insurance Corporation ("FDIC").[3]  (CTAC, Exs. C, E, F.)  However, as other courts have found, allegations from other complaints or documents, which are unproved and are contested, may not be used to establish facts to demonstrate scienter.  *See In re Connetics Corp. Securities Litigation*, 542 F. Supp.2d 996, 1005-1006 (N.D. Cal. 2008) (pursuant to attorneys' nondelegable responsibility to personally validate the truth of the papers filed under Federal Rule of Civil Procedure 11, striking allegations based on SEC complaint where plaintiffs did not contend that they conducted an independent investigation in the alleged facts); *see also In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("Second Circuit case law makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or

---

[2] Wu argues that his stock purchases during the class period undermine Plaintiffs' showing of scienter.  However, courts have refused to hold that stock purchases were inconsistent with fraud where the defendants could have believed they could have continued to hide the fraud.  *See Freudenberg v. E*Trade Financial Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010) ("Where a defendant may have believed that he could eventually sell his shares at a profit by continuing to hide the fraud or by resolving undisclosed problems without the public learning of the true facts, courts refuse to hold that defendants' stock purchases were inconsistent with fraud."); *see also In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 646-47 (S.D.N.Y. 2007) (rejecting argument that defendants' stock purchases of stock were inconsistent with fraud, because defendants might have believed that the fraud could be hidden indefinitely and that company's stock would accordingly continue to rise).  In light of Plaintiffs' allegations regarding Wu's efforts to shield the information regarding the Company's actual financial state, the Court finds that Wu's stock purchases are not necessarily inconsistent with his scienter.

[3] Although the FDIC's notice contains a section entitled "FINDINGS OF FACT AND CONCLUSIONS OF LAW," the notice makes clear that some of the stated facts are merely "preliminary allegations."  Moreover, the notice provides the respondents an opportunity to file an answer and request a hearing.  Therefore, it appears as though these stated facts, although labeled "findings of fact," are akin to unproven allegations in a complaint.

United States District Court

For the Northern District of California

permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure."); *In re Apollo Group, Inc. Sec. Litig.*, 2011 WL 5101787, *10 n.5 (D.Ariz. Oct. 27, 2011) ("The Court agrees that because allegations from other complaints are unproven and contested, they do not amount to 'facts' sufficient to establish a strong inference of scienter.")

In opposition to On's and Cinderey's motions to dismiss, Plaintiffs argue that they may rely on the fact that On and Cinderey consented to entry of final judgment in the SEC actions against them. (Opp. to On Mot. at 5-6; Opp. to Cinderey Mot. at 6.) However, in the consents filed by On and Cinderey, they neither admitted nor denied the allegations against them. (*SEC v. Wu, et al.*, Case No. 11-cv-4988-JSW (N.D. Cal.), Docket No. 2; Declaration of Phillip Kim in Opposition to Cinderey's Motion, Ex. 3.) Therefore, there are no "findings" upon which Plaintiffs may rely.

Plaintiffs also seek to rely on the alleged assertions of the Fifth Amendment privilege against self-incrimination during the SEC's investigation. In support of this proposition, Plaintiffs cite to *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998), in which the Ninth Circuit held that "[p]arties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof." If, at some point, individual defendants invoke the Fifth Amendment in this action, *Colello* stands for the proposition that this Court has discretion to draw a negative inference regarding the defendants' burden of proof. However, *Colello* does not hold that Plaintiffs may rely on the as yet unproven allegations in an SEC complaint merely because the defendants invoked the Fifth Amendment during the investigation for that case. Therefore, the Court finds Plaintiffs' reliance on *Colello* is misplaced.

Finally, Plaintiffs also rely on the information filed against Lauren Tran ("Tran") and the Court's subsequent acceptance of her guilty plea. (CTAC, Ex. D.) Tran was the Bank's Vice President and Manager of Credit Policy. (*Id.*) Tran pled guilty to the Information in which the United States charged Tran with, beginning no later than December 2008, along with other unnamed individuals, engaging in a conspiracy and fraudulent scheme to deceive the

United States District Court

For the Northern District of California

investing public and bank regulators by manipulating the Bank's books and records in such a

manner that:

> (a) misrepresented and concealed the Bank's true financial condition and performance, in that the books and records did not fairly and accurately in all material respects represent the Bank's true financial condition and performance, and omitted to disclose facts necessary to make those books and records truthful and accurate, and (b) supported false and misleading public statements and representations about the Banks's financial condition and performance.

(CTAC, Ex. D ¶ 11.)  Tran, along with other unnamed individuals, engaged in the following

conduct: (1) fraudulently overvaluing collateral securing impaired loans in an effort to avoid or

delay a material increase in the Bank's ALL; (2) materially falsifying the Bank's books and

records in an effort to conceal the extent to which the collateral securing impaired loans had

been overvalued; (3) making and causing to be made materially false and misleading statements

to the Bank's independent auditor, including misleading the independent auditor regarding lists

of recent appraisals and by failing to provide the independent auditor with all of the recent

appraisals.  (*Id.*, Ex. D ¶ 13.)  Tran's fraud included a scheme to defraud in connection with the

securities of the Company.  (*Id.*, Ex. D ¶ 17.)

However, the information does not identify the other unnamed individuals.  (*Id.*, Ex. D.)

Accordingly, Tran's information and guilty plea does not support showing of scienter against

individual defendants and, thus, Plaintiffs have failed to cure the defects identified by the Court

when it dismissed their CAC.  Therefore, the Court grants the motions by Kerr, On, Shabudin,

Yu and Cinderey regarding the Plaintiffs' claims against them under Section 10(b) and Rule

10(b)-5.  Moreover, because Plaintiffs do not argue that there are additional facts that they

could plead against Kerr, On, Shabudin, Yu and Cinderey, the Court is not granting Plaintiffs

leave to amend these claims.  However, this Order is without prejudice to Plaintiffs moving for

leave to amend if they obtain additional information supporting their claim against these

defendants.  Moreover, the Court notes that Plaintiffs have also stated a claim under Section

10(b) and Rule 10(b)-5 against doe defendants which have not been challenged by Defendants.

Therefore, this Order is also without prejudice to Plaintiffs seeking leave to substitute the doe

defendants if Plaintiffs later discover their identity.

1        Nevertheless, the Court finds that Tran's information and guilty plea may be imputed to

2    UCB based on respondeat superior.  See *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576-

3    78 (9th Cir. 1990); *see also S.E.C. v. Sells*, 2012 WL 3242551, *8 (N.D. Cal. Aug. 10, 2012)

4    (imputing individual officer's knowledge to the company through the application of the doctrine

5    of respondeat superior); *In re Hienergy Tech., Inc.*, 2005 WL 3071250, *8 (C.D. Cal. Oct. 25,

6    2005) (imputing scienter onto the company when the pleadings supported a finding of scienter

7    on the part of a corporate officer or director).  In light of the imputation of Tran's scienter

8    through respondeat superior, the Court finds that Plaintiffs have sufficiently alleged a primary

9    violation of Section 10(b) and Rule 10(b)-5 by the Bank.

10   **II.    CONTROL PERSON LIABILITY**

11       Plaintiffs' second cause of action is for a violation of Section 20(a) of the 1934

12   Securities Exchange Act, 15 U.S.C. § 78t, or control person liability.  Section 20(a) provides

13   derivative liability for those who control others found to be primarily liable under the Act.  *See*

14   *In re Ramp Networks, Inc. Sec. Lit.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002); *see also*

15   *Johnson v. Aljian,* 490 F.3d 778, 781 n.11 (9th Cir. 2007).  To claim "control person" liability

16   under Section 20(a), Plaintiffs must demonstrate "'a primary violation of federal securities law'

17   and 'that the defendant exercised actual power or control over the primary violator.'"  *Zucco*

18   *Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009) (citations omitted).  "To be

19   liable under section 20(a), the defendants must be liable under another section of the Exchange

20   Act."  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir.1999).  Where a

21   plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the

22   pleading requirements for both violations are the same.  *See In re Ramp Networks*, 201 F. Supp.

23   2d at 1063.

24       "In general, the determination of who is a controlling person ... is an intensely factual

25   question."  *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1161 (9th

26   Cir.1996) (citation omitted); *see also Howard*, 228 F. 3d at 1065 (determining who is a

27   controlling person is usually an "intensely factual question, involving scrutiny of the

28   defendant's participation in the day-to-day affairs of the corporation and the defendant's power

**United States District Court**
For the Northern District of California

15

to control corporate actions.").  Plaintiffs "need not show the controlling person's scienter or that they "culpably participated" in the alleged wrongdoing."  *Id*.  Moreover, "[a]lthough a person's being an officer or director does not create any *presumption* of control, it is a sort of red light."  *Id*. at 1163 (emphasis in original) (citation omitted).  Courts have found "general allegations concerning an individual's title and responsibilities" to be sufficient to establish control at the motion to dismiss stage.  *In re Metawave Communications Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003); *see also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1031-32 (finding allegations that defendants held positions as CEO and Chairman of the Board and described their roles were sufficient to show they were involved in the company's day-to-day business); *In re Cylink Sec. Litig.*, 178 F.Supp. 2d 1077, 1079 (N.D. Cal. 2001) (finding sufficient for control person liability allegations that the individual defendants, "by virtue of their executive and managerial positions had the power to control and influence [Cylink], which they exercised").

In *Paracor Finance*, the Ninth Circuit held that the plaintiffs failed to sufficiently allege that the CEO and Chairman was liable under Section 20(a).  *Id*. at 1163-64.  However, a report found that the CEO and Chaiman was "the classic conceptualizer and idea man who leaves behind a long swath of details from someone else to handle."  *Id*. at 1163.  Moreover, this individual defendant, despite his title, was not authorized to act on the company's behalf in the offering at issue.  *Id*.

Plaintiffs have adequately pled a violation of Section 10(b).  In addition to the claim against Wu, discussed above, Plaintiffs have stated a claim against the Bank based on respondeat superior the for the securities fraud committed by Tran.  *See Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576-78 (9th Cir. 1990) (en banc).  Thus, the issue presented by the motions to dismiss is whether the individual defendants exercised power or control over the securities fraud.  The Court will address the individual defendants in turn.

**A.    Thompson.**

Plaintiffs allege that Thompson served as the Bank's Senior Vice President and Corporate Controller from August 1, 2008 through the end of the Class Period.  They further

16

allege that Thompson exercised direct day-to-day control over the financial operations and financial reporting for UCB and UCBH.  (CTAC ¶ 141.)  Such allegations are sufficient at this procedural stage to state a claim for control person liability.

**B.      Gautsch.**

Gautsch served as the Bank's Executive Vice President and Chief Risk and Compliance Officer.  Plaintiffs allege that, as the Chief Risk Officer, he had direct supervisory responsibility over the IARD function.  (CTAC ¶¶ 56-57, 138.)  In light of the alleged central role of the delayed loan review report from the IARD in the securities fraud, the Court finds that such allegations are sufficient to state a claim under Section 20(a).

**C.      Mitchell.**

Mitchell was the Company and Bank's Senior Vice President and Director of Corporate Development and Investor Relations from March 3, 2008 through the end of the Class Period. (CTAC ¶ 139.)  On October 24, 2008 and January 23, 2009, Mitchell spoke on the Company's behalf on an earnings conference calls with investors.  (*Id.* ¶¶ 196, 267(b).)  On press releases issued by UCBH regarding the Company's financial statements for the first two quarters of 2009, Mitchell was named as one of the contact persons.  In the press release, Mitchell's title was listed as "Senior Vice President, Director of Investor Relations and Capital Management." (Plaintiffs' Request for judicial notice, Exs. 5, 6.)  Such allegations are sufficient to state a claim for control person liability.

**D.      Nagel.**

Nagel served Senior Vice President and Chief Audit Executive from July 14, 2008 through the end of the Class Period.  (CTAC ¶ 136.)  As Chief Audit Executive, Nagel had responsibility for and special knowledge over the IARD.  (*Id.*)  Plaintiffs allege that, pursuant to the Audit Committee Charters for UCB and UCBH, "the primary purpose of the Audit Committee was to assist the Board of Directors in fulfilling its responsibilities to oversee the accounting, auditing, and financial reporting processes of the Company and the internal and external audit process."  (*Id.* ¶ 159 (internal quotation marks omitted).)  The Audit Committee

17

was required to "[s]erve as an independent and objective party to monitor the Company's financial reporting process, internal control system, and resolution of regulatory examination findings." (*Id.* ¶ 160.) Additionally, the Audit Committee was responsible for reviewing and discussing the Company's financial statements filed with the SEC and its earnings press releases. (*Id.* ¶ 162.) As stated above, in light of the alleged central role of the delayed loan review report from the IARD in the securities fraud, the Court finds that such allegations are sufficient to state a claim under Section 20(a).

**E.      Kerr.**

Kerr served as UCBH's Executive Vice President and Chief Credit Officer from January 1, 2008 until September 11, 2008, when he was appointed Executive Vice President and Director of Portfolio Management and Credit Compliance until January 9, 2009. (CTAC ¶ 137.) Plaintiffs allege that Kerr exercised supervisory control over the process of evaluating and reserving for impaired loans. (CTAC ¶ 137.) These allegations are sufficient at this procedural stage to state a claim for control person liability.

**F.      On.**

Defendant On was the Chief Financial Officer and Executive Vice President of UCBH and the Bank from October 2008 through the end of the Class Period. (CTAC ¶ 134.) On served as the Deputy Chief Financial Officer for UCBH from May 2008 to October 2008, and as Senior Vice President and Corporate Controller from June 2005 to March 2008. (*Id.*) Press releases issued by UCBH regarding the Company's financial statements for the first two quarters of 2009 named On as one of the contact persons. (Plaintiffs' Request for Judicial Notice, Exs. 5, 6.) Plaintiffs further allege that On signed the SOX certifications for the 10-Qs for the second and third quarter in 2008, as well as for the 2008 10-K. (CTAC ¶ 207.) On spoke on behalf of the company regarding its determination of its Provision and ALL during a conference call on October 24, 2008, signed call reports, and signed the 2008 10-K. (*Id.* ¶¶ 103, 105, 194, 199, 207, 211, 214, 219, 229.) Plaintiffs have alleged sufficient facts to state a claim under Section 20(a) against On.

United States District Court

For the Northern District of California

**G.    Wu**

Defendant Thomas Wu was Chairman of the Board, President and Chief Executive Officer of UCBH and UCB from 2001 until his resignation on September 4, 2009. (CTAC ¶ 131.)  The MLR identifies Wu as someone who "exercised a considerable amount of influence over UCB's operations" and found that he was "ultimately responsible" for the practices which led to the alleged securities fraud. (CTAC, Ex. A at p. 20.)  In light of such statements which are incorporated into the operative complaint, Plaintiffs' claim against Wu under Section 20(a) is sufficient.

**H.    Shabudin.**

Defendant Ebrahim Shabudin served as Executive Vice President and Chief Operating Officer of UCBH and the Bank from 2005 until his resignation on September 4, 2009. (CTAC ¶ 132.)        The MLR states that the investigative report conducted by UCBH's Audit Committee found that bank employees modified loan terms to delay negative consequences, intentionally delayed recognizing risk rating downgrades or specific reserves, misrepresented and withheld relevant information from the Company's independent auditor, and altered documents in order to improve the perception of credit quality. (*Id*., Ex. A at pp. 6-7.)  The report also raised serious concerns regarding the actions of a number of UCB management officials.  As a result of the investigative result of the report, Shabudin resigned. (*Id*., Ex. A. p.7.)  Such allegations are sufficient to show, at this procedural stage, that Shabudin exercised actual power or control over the alleged fraudulent scheme.

**I.    Yu.**

Defendant Thomas Yu served as the First Vice President, Retail Product Manager of the Bank from 2006 to February 2008, First Vice President, Manager of Credit Risk & Portfolio Management of the Bank from February 2008 to March 2009, and was Senior Vice President, Manager of Credit Risk & Portfolio Management of the Bank from March 2009 to June 2009. (CTAC ¶ 133.)  Plaintiffs argue, but do not plead that, as the Manager of Credit Risk & Portfolio Management, Yu exercised day-to-day control over the Bank's loan portfolio.  Given the nature of the alleged fraud, such a fact, if it had been alleged, would have been sufficient to

United States District Court

For the Northern District of California

1   establish control person liability at this procedural stage.  However, Plaintiffs only argued this

2   fact.  Without such an allegation, Plaintiffs' mere allegations regarding Yu's positions within

3   the Bank are insufficient.  Therefore, the Court grants Yu's motion to dismiss Plaintiffs' claim

4   for control person liability, but will provide Plaintiffs with leave to amend to allege that Yu

5   exercised day-to-day control over the Bank's loan portfolio and that he had control over the

6   assessment and sales of the Bank's troubled loans and its loss reserve calculations.

7          **J.      Cinderey.**

8          Defendant John Cinderey served as the Company's and Bank's Executive Vice

9   President and Director of Commercial Banking from January 2008 through the end of the Class

10  Period.  Prior to his appointment to those positions, he had served as the Company's and Bank's

11  Senior Vice President and Director of Real Estate Lending since 2006.  (CTAC ¶ 142.)

12         Plaintiffs allege that Cinderey exercised day-to-day control over the loans that were the

13  subject of the alleged fraud.  (*Id.*)  Such allegations are sufficient to show, at this procedural

14  stage, that Cinderey exercised actual power or control over the alleged fraudulent scheme.

15         **K.      Director Defendants.**

16         Although not all courts agree, numerous courts have found that allegations that directors

17  signed the statements which contain the material misrepresentations are sufficient to state

18  Section 20(a) control status.  *See, e.g. In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534,

19  555 (N.D. Cal. 2009); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1037 (C.D. Cal. 2008)

20  ("While an individual's status as an officer or director of the issuing corporation is insufficient,

21  standing alone, to demonstrate the exercise of control ..., persuasive authority indicates that an

22  officer or director who has signed financial statements containing materially false or misleading

23  statements qualifies as a control person.") (internal citation omitted) (citing cases); *In re*

24  *Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F. Supp. 2d 1148, 1182 (D. Colo. 2012)

25  (holding that the "Defendants' authority to sign or not sign the registration statements at issue is

26  sufficient indicia of 'control' over the representations and disclosures that went out to potential

27  investors to support 'control person' liability at the pleading stage of this litigation."); *Jacobs v.*

28  *Coopers & Lybrand, LLP*, 1999 WL 101772, *18 (S.D.N.Y March 1, 1999) (listing cases).  As

United States District Court

For the Northern District of California

the court in *Jacobs* aptly noted, "[i]t does comport with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report." *Jacobs*, 1999 WL 101772 at *18.

With respect to all of the Director Defendants except Chau, Plaintiffs allege that each one signed the Company's 2008 10-K. (CTAC ¶ 207.) However, according to Plaintiffs, Chau only signed the 2007 10-K. (*Id.* ¶¶ 183, 207.) The Director Defendants argue that Plaintiffs fail to allege any facts to demonstrate that the 2007 10-K contained materially false and misleading statements. Plaintiffs do not meaningfully address this argument. The bulk of Plaintiffs allegations and arguments center around the financial statements issued on the 2008 fiscal year. Accordingly, the Court grants the Director Defendants' motion with respect to Chau but denies the motion with respect to the other Director Defendants and denies the motions by the other individual defendants regarding Plaintiffs' control person liability claim.

**III.    Cinderey's Motion to Dismiss For Untimely Service.**

Defendant John Cinderey moves to dismiss Plaintiffs' CTAC for failure to serve within the 120-day period set forth in Rule 12(m). The Court finds that Plaintiffs have demonstrated excusable neglect and, thus, have shown good cause for their delay. Accordingly, the Court denies Cinderey's motion to dismiss pursuant to Rule 12(b)(5).

The Court also denies Cinderey's motion to dismiss for failure to prosecute under Rule 41(b). Cinderey failed to demonstrate the existence of extreme circumstances which warrant the harsh remedy of dismissal.

### CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are DENIED IN PART and GRANTED IN PART as follows:

(1)    The Court GRANTS the motions to dismiss and DISMISSES the Plaintiffs' claims against Kerr, On, Shabudin, Yu and Cinderey under Section 10(b) and Rule 10(b)-5. These claims are dismissed without leave to amend. However, this Order is without prejudice to Plaintiffs moving for leave to amend if they obtain additional information supporting their

claim against these defendants.  Moreover, this Order is also without prejudice to Plaintiffs

seeking leave to substitute the doe defendants if Plaintiffs later discover their identity.

(2)     The Court DENIES Wu's motion to dismiss Plaintiffs' claim under Section 10(b)

and Rule 10(b)-5 against him.

(3)     The Court GRANTS the motions to dismiss and DISMISSES Plaintiffs' claims

for control person liability under Section 20(a) claims against Yu and Chau.  Plaintiffs shall

have leave to amend their Section 20(a) claim against Yu.

(4)     The Court DENIES the motions to dismiss Plaintiffs' Section 20(a) claims

against Thompson, Gautsch, Mitchell, Nagel, Kerr, On, Wu, Shabudin, Cinderey, and all of the

Director Defendants except Chau.

(5)     The Court DENIES Cinderey's motion to dismiss based on untimely service or

for failure to prosecute.[4]

If Plaintiffs elect to file an amended consolidated complaint, they shall do so by

September 17, 2012.  Moreover, if Plaintiffs amend their complaint, they shall also file by

September 17, 2012, a side-by-side comparison of their new complaint and the CTAC, or a

redline version of the two complaints.  The Court HEREBY SETS a further case management

conference for November 2, 2012 at 1:30 p.m.  The parties must file a joint case management

statement by October 26, 2012.

**IT IS SO ORDERED.**


Dated: August 29, 2012

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[4] The parties are admonished that, in future filings, any incorporation by reference of
pages from other briefs or pleadings will be counted towards the page limits.